UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond K. HORTON and Billie Sol
Estes, Defendants-Appellants.

Nos. 79–5444, 79–5477.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 28, 1981.

Rehearing Denied Aug. 7, 1981.

G. Brockett Irwin, Longview, Tex., for Estes.

David L. Botsford, Emmett Colvin, Dallas, Tex., for Horton.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Shirley Baccus-Lobel, Asst. U. S. Atty., Dallas, Tex., for United States.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE *, District Judge.

GARZA, Circuit Judge.

In the early 1960's Billie Sol Estes was convicted of tax fraud and served a number of years in prison. One of the conditions of his parole from prison was that he would not engage in any promotional activities. Estes still has a federal tax liability which numbers in the tens of millions of dollars.

In the present case, Estes was convicted of one count of creating a scheme and artifice to defraud and to obtain money by means of false pretenses in violation of 18 U.S.C. § 1341. He was sentenced to five years on this conviction. At the same time, Estes and the appellant Raymond K. Horton were convicted of conspiracy to defraud the United States by concealing assets from the Department of the Treasury in violation of 18 U.S.C. §§ 371 and 2. Estes was sentenced to a term of five years to run consecutively to the sentence in the case mentioned above. Horton was sentenced to three years confinement and a fine of $10,-000. On the same day as sentencing, Estes was taken into custody on a warrant for violation of his parole.

The basis of the first conviction involved a transaction engineered largely by Estes to purchase an electronics company with other people's money. The appellant Horton was not involved in any way in this case. The purchase plan in itself would have been no grounds for criminal action except that Estes and a woman named Sue Goolsby, who later pled guilty, apparently forged one of the investor's signatures on financial statements, guarantees and lease agreements. In addition to that, Estes persuaded another investor to contribute a sizable amount of money in a petroleum company, after which the funds were diverted to infuse the electronics company with much needed cash. This same investor later made a loan to this electronics firm. He never received any return whatsoever on his investment.

In the concealment of assets case, in which Horton and Estes were convicted of conspiracy, the government alleged that Horton and Estes had been involved in ventures which funneled money to Estes without the knowledge of the Internal Revenue Service. The government contended that Estes was concealing these funds to prevent the IRS from obtaining a portion of the income to offset the huge tax liability of Estes. Horton was a successful businessman who had made his money in oil but was attempting to branch out into other areas of business. At the time of his difficulties with Estes and the government, Horton was, at least on paper, a multimillionaire.

Upon Estes' release from prison in 1971, Horton discussed working with Estes on business transactions and later hired Estes to help work out deals solely for Horton's benefit. Horton paid Estes a salary of about $700 a month. Horton entered certain business arrangements in which Estes had assisted him, and Horton desired to give Estes a percentage of any profit at some later date when such an arrangement would be legal for Estes. Horton also entered an agreement with Estes' brother, Dr. John Estes, in which the latter would receive upon Horton's death, one-half of that amount of Horton's estate which exceeded three million dollars. John Estes then placed this right in a trust for the benefit of Billie Sol Estes' children. The evidence clearly shows that such an arrangement standing alone was completely legal, although Horton's attorney believed it did not amount to good business sense.

* District Judge for the Western District of Texas, sitting by designation.

In 1974 and 1975, Horton purchased a chemical cleaning manufacturing business. This firm was to assemble high pressure chemical cleaners that would clean oil field equipment. While involved in this business, Horton directed that certain monies from the sale of the cleaners, which incidently were non-existent, be given to Billie Sol Estes in hundred dollar denominations. The man delivering this money to Estes, Frank Fuell, was told by Horton that Estes would then convey the money to a man named Barrett as a sales commission. Fuell repeatedly asked for Barrett's social security number for tax and accounting purposes, but Horton never gave it to him. Barrett testified for the government during which he stated that he did receive partial payment on his commission, but that it had been paid by check.

In 1977, the government decided to investigate Estes' financial statements, which Estes contended were very minimal. Government agents, acting as potential investors with shady, mafia-like connections, contacted Estes to discuss certain business deals. The government agents recorded their conversations with Estes, both personally and by telephone. A number of these tapes or parts thereof were introduced into evidence at the trial. In these tapes, Estes told the government agents that he had ownership rights in Horton's business, that he knew how to handle Horton and that he in effect controlled Horton. Estes also told the agents that his actual worth was very high but that his money was kept in the name of someone else since he was not allowed to have it in his name. Estes also promised to obtain a contract from Horton in which Horton would pledge fifty one percent of his company, of which Estes claimed he owned one-half. In this transaction, Estes had told the government agents not to talk to Horton about the deal and that Estes could take care of it. When the agents subsequently called Horton, however, Horton told them that Estes could

sign no contract and that nothing could be worked out until Horton agreed. The contract was eventually signed by Horton placing the collateral in the name of a nominee.

Both appellants now raise a number of grounds of error. Horton contends that the evidence was insufficient to convict him of conspiracy, that the trial court erred in failing to make a determination as to the admissability of statements made by Estes, that the trial court erred in its jury charge and that the trial court's failure to order a severance was error. Estes claims on appeal that his case should have been dismissed either for prosecutorial vindictiveness, violation of the Speedy Trial Act or for refusing to enforce a plea bargain agreement. Estes also contends that he was denied a fair trial since one of the jurors was allegedly prejudiced by the media and that the court erred in amending his sentence outside of his presence and without a hearing.

Horton and Estes were convicted of conspiracy to defraud the United States pursuant to 18 U.S.C. § 371.[1] Specifically, the two were accused of impeding the Department of the Treasury from collecting back taxes by means of the concealment of assets. Only Horton challenges the sufficiency of the evidence. The evidence is insufficient when a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendant's guilt under the evidence. *United States v. Ocanas*, 628 F.2d 353, 360 (5th Cir. 1980).

■ In order to find that Horton was a member of the conspiracy, the government must have shown beyond a reasonable doubt, if only by circumstantial evidence, that a conspiracy existed, that Horton knew of it and that he intended to associate himself with the objectives of the conspiracy. *United States v. Caicedo-Asprilla*, 632 F.2d 1161, 1166 (5th Cir. 1980). In the instant case, there can be no doubt that Estes'

---

1. 18 U.S.C. § 371 makes it a crime:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency

thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy. . . .

conversations with the agents, which are preserved on tape, comprise evidence that Horton knew that Estes possessed large amounts of cash and even owned half of one of Horton's companies.

■ However, standing alone, all the damaging evidence of Estes' conversations are inadmissible. Before Estes' statements could ever be considered by a court, the government must show by a preponderance of the evidence, independent of those conversations, that a conspiracy existed, that Estes and Horton were members of that conspiracy and that the statements were made during the course of and in furtherance of the conspiracy. *United States v. Ocanas*, 628 F.2d at 359; *United States v. James*, 590 F.2d 575, 581 (5th Cir. 1979) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). *See also United States v. Ricks*, 639 F.2d 1305 (5th Cir. 1981).

■ In the present case, the government barely met this threshold requirement. In its appellate brief, the government devotes one page out of twenty four pages of argument to the issue of the sufficiency of the evidence in a trial whose transcript exceeds four thousand pages. The government's main thrust seems to be that the two individuals were involved in a "quite intimate business relationship," implying that Horton must have known of any illegalities committed by Estes.[2] That factor alone is too weak to convict a man of conspiracy to defraud the United States. Mere associa-

tion with someone involved in a criminal enterprise is insufficient to prove participation in a conspiracy. *United States v. Gutierrez*, 559 F.2d 1278, 1280 (5th Cir. 1977). Horton's agreement with Dr. John Estes to leave part of his estate to the latter is hardly evidence of a conspiracy to defraud the government. Horton's desire to give Estes a share of the profits at some undetermined future time is hardly evidence of a conspiracy to defraud the government. Horton's possible involvement in selling allegedly nonexistent chemical cleaners to private individuals is hardly evidence of a conspiracy to defraud the government.

■ In spite of the weakness of the government's evidence, Horton's orders for Frank Fuell to give Estes large amounts of cash on two occasions, regardless of Horton's claim that Estes did not keep the money, reasonably could show by circumstantial evidence an agreement between the two to divert money to Estes without the government's knowledge. The introduction of that evidence could then reasonably allow the jury to infer criminal motives from the otherwise innocent acts mentioned above. Thus, we conclude that the government satisfied the burden of showing by a preponderance of the evidence that a conspiracy existed and that Estes and Horton were members of it. Estes' conversations, therefore, were admissible and their believability along with Estes' and Horton's testimony at trial became matters for the jury to weigh and accept or reject.

2. Although we find that the government in this case presented enough evidence to allow the introduction of a coconspirator's statements at trial, this court, the district court and the attorneys for the United States should always remain cognizant of the words of Justice Jackson in *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring). In a concurrence joined by Justices Frankfurter and Murphy, Justice Jackson referred to conspiracy as an "elastic, sprawling and pervasive offense." *Id.* at 445, 69 S.Ct. at 719, 93 L.Ed. at 795. Conceding that the basic principal of conspiracy is necessary in modern criminal law, Justice Jackson stated that "even when appropriately invoked, the looseness and pliability of the doctrine present inherent dangers which should be in the background of judicial thought wherever it is sought to extend the doctrine to meet the exigencies of a particular case." *Id.* at 449, 69 S.Ct. at 721, 93 L.Ed. at 797. In our case today, the government's evidence of a conspiracy minimally met the preponderance of the evidence test which is required to allow coconspirators' statements to go to a jury. We would only caution those who present indictments to grand juries by echoing Justice Jackson's remarks that a court should not strain "to uphold any conspiracy conviction where prosecution for the substantive offense is adequate and the purpose served by adding the conspiracy charge seems chiefly to get procedural advantages to ease the way to conviction." *Id.* at 457, 69 S.Ct. at 724, 93 L.Ed. at 801.

■ Horton's second challenge regards the trial court's alleged failure to make a determination as to the admissibility of statements of an alleged coconspirator, namely Estes. During the testimony of the main government witness, the judge ruled that the government was coming forward with evidence showing a relationship between Horton and Estes. At the close of the evidence, Horton sought a judgment of acquittal, based largely on the hearsay evidence. The judge overruled this motion. Although the trial court did not specifically say that there was sufficient independent evidence, it is clear that his comments during the government's case and his overruling of the defendant's various motions involving the hearsay objection, show that the trial court found there to be sufficient independent evidence of the conspiracy and that Horton and Estes were involved in it.

■ Horton also alleges that the trial court erred in failing to give a certain charge. No objection was made at the time of the instruction, and so this court may reverse only if plain error exists. *United States v. Berrojo*, 628 F.2d 368, 370 (5th Cir. 1980). The trial court gave a completely adequate instruction on the law of conspiracy. In fact, the trial court adhered to the instructions recommended by the District Judges Association For The Fifth Circuit in its manual on pattern jury instructions. *See Pattern Jury Instructions for the Fifth Circuit*, Offense Instruction 3A (March 1, 1979). Horton concedes this point but contends that the trial court failed to give an instruction which he alleges is also in the Fifth Circuit Pattern Jury Instruction manual.

■ The Fifth Circuit pattern jury instruction to which Horton refers no longer exists. Horton does contend, though, that included in that instruction was a charge which cautioned that a jury could only determine an alleged coconspirator's involvement from evidence of his own acts and statements. The trial judge in this case did not include such a charge. Neither defendant objected to this omission at trial. Although the trial court could have included

such an instruction, its absence did not prejudice either defendant and does not amount to plain error. *See United States v. Calarco*, 424 F.2d 657, 661 (2d Cir. 1970), *cert. denied*, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 53 (1970).

Horton finally contends that the trial court erred in failing to grant a severance, which was requested a number of times throughout the trial. Horton claims that the severance should have been granted for any one or all of four reasons: 1) antagonistic defenses; 2) the trial court's excusal, over objection, of jurors who might have been prejudiced against Estes but knew nothing of Horton; 3) references to Estes' prior guilty plea involving some of the charges in this case; 4) introduction of hearsay evidence contrary to *United States v. James*.

■ It must be remembered that the granting or denial of a motion for severance is in the discretion of the trial court, *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir. 1980), and appellate courts are hesitant to second guess a trial court's refusal to grant a severance. *United States v. Marino*, 617 F.2d 76, 83 (5th Cir. 1980). Severance should only be granted if the appellant can show that he was unable to obtain a fair trial without a severance and that he can demonstrate compelling prejudice which the trial court could not alleviate. *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978). Severance is allowable when antagonistic defenses are present, but the conflict must reach a point where the defenses are irreconcilable and mutually exclusive. *Id.* The defenses in this case never reached that level. One indication of the lack of antagonistic defenses was that both defendants testified and denied culpability. *See United States v. Andrew*, 606 F.2d 549, 550 (5th Cir. 1979). A thorough reading of the record convinces this court that the defenses were not antagonistic and, in fact, were extremely consistent.

■ Horton's challenge concerning Estes' guilty plea is equally not grounds for

severance. Estes had entered a plea bargain agreement earlier in the litigation but withdrew it upon recommendation of the court. The government never introduced any evidence regarding this guilty plea due to the court's ruling that it was inadmissible. It was originally mentioned in Estes' opening argument and mentioned again by Horton's counsel when questioning members of Estes' family. The trial judge also instructed the jury as to the presumption of the defendants' innocence and that each defendant was to be tried separately on only the evidence against him. This court is satisfied that no undue prejudice attached to Horton because of the mentioning of Estes' guilty plea. The fact that the trial court may not have given a specific instruction as to the effect of the guilty plea on both defendants does not amount to reversible error since apparently no such instruction was ever requested and there were no additional aggravating circumstances that might have forced the trial court to give such a specific instruction on its own. *See United States v. DeLucca*, 630 F.2d 294, 299 (5th Cir. 1980).

 The court has already ruled that the introduction of Estes' statements was correct and, thus, cannot be a ground for severance. This court finds equally unacceptable Horton's argument regarding the excusal of jurors that were not specifically prejudiced against Horton but were possibly prejudiced against Estes. A defendant does not have a right to a specific juror but only to a fair and impartial one. Since the two defendants were rightly tried together, the occurrence in this case regarding such jurors is a potential and often likely one. We find no error in the court's refusal to grant a severance on this point.

Estes contends that his motion to dismiss and plea in bar of prosecution should have been granted by the government on the grounds of prosecutorial vindictiveness and impropriety. Estes' basis for this charge is that the government threatened the bringing of indictments against members of his family. Estes also relies upon the government's agreement not to seek indictments

in return for his guilty plea, that the government did not uphold its part of the bargain by using its best efforts to obtain approval of the agreement from the United States Parole Commission and that the government then vindictively caused the return of a number of indictments against him in place of the one-count guilty plea.

 This court finds that there was no prosecutorial vindictiveness or bad faith. First, there is no violation of the defendant's rights when the government brings more serious charges against the defendant after he has decided not to plead guilty to a lesser charge provided the defendant knew that those more serious charges existed at the time of the plea bargain. *Bordenkircher v. Hayes*, 434 U.S. 357, 360, 98 S.Ct. 663, 665, 54 L.Ed.2d 604, 609 (1978); *United States v. Ocanas*, 628 F.2d at 358. In the instant case, Estes was well aware at the time of his plea agreement of the existence of the charges that were inevitably brought against him. This court finds no impropriety in the government's warnings that members of his family could be indicted as well. As to the government's agreement *vis a vis* the Parole Commission, the government agreed that it would:

> recommend to the United States Parole Commission that Billie Sol Estes' parole be revoked for technical violations of the terms of his parole for a period commencing with the beginning date of any sentence imposed hereunder and ending no later than the date of the expiration of his present parole, and will further recommend that the parole not be revoked for a period of time commencing with the date that Billie Sol Estes was released from the Federal Corrections Institution; and that Billie Sol Estes be sentenced after the United States Parole Commission has acted on this recommendation. . . .

The plea bargain also stipulated that if the Parole Commission failed to accept and act on the United States Attorney's recommendation, the agreement would be null and void. The government also agreed not to object to any release on parole of Estes.

The government did make contact with the Parole Commission on this matter according to the plea agreement. The Parole Commission, however, decided to delay any decision until after the sentencing of Estes. The district court then held that the agreement was unenforceable since the government could not bind the Parole Commission. The court then allowed Estes to withdraw his plea, which he did. The government upheld its part of the agreement, and this court finds no breach of that agreement.

 Estes' alternative challenge on this point concerns an alleged violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. This court finds no violation of the Speedy Trial Act, and further finds that even if there had been a violation, dismissal would not be required since that sanction found in 18 U.S.C. § 3162 did not become effective until over a year after the trial on this case began in June of 1979. *See* 18 U.S.C. § 3162(c) (sanctions imposed for violations of the act "become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980.")

Estes' second alternative challenge on this point concerns alleged error by the court in refusing to enforce the plea bargain. Estes contends again that the government did not use its best effort to satisfy the terms of the agreement. A thorough review of the record convinces this court that the government did correspond with the Parole Commission to effectuate the terms of the agreement. These efforts by the government resulted in a recommendation by the commissioner of the Parole Commission, Dr. William E. Amos, that the Parole Commission follow the recommendation of the government according to the plea agreement. Therefore, Estes' challenges regarding his motion to dismiss and plea in bar of prosecution are without merit.

Estes next contends that the trial court should have granted his motion for a new trial on the ground of juror misconduct. One of the jurors contended that he was influenced by the media to such an extent that he believed he was the only one who considered Estes not guilty. Throughout the trial, the court had admonished the jurors not to read or listen to news accounts of the trial. A hearing was held on the motion for new trial. The trial court examined all the matters raised at the hearing and determined that no specific evidence was presented which could indicate grounds for influencing the juror. Finding no such evidence, the court determined that there had been no actual prejudice and denied the motion for a new trial.

 The determination of the existence of juror prejudice is within the sound discretion of the court. *United States v. Goodman*, 605 F.2d 870, 882 (5th Cir. 1979). Each claim of juror prejudice must turn on its own facts, *id.*, and to satisfy his burden the defendant must show an actual identifiable prejudice attributable to publicity surrounding the trial on the part of a member of the jury. *Mayola v. State of Alabama*, 623 F.2d 992, 996 (5th Cir. 1980). In the instant case, the trial judge discounted the testimony of the juror and failed to find any prejudice in the publicity to which Estes referred during the hearing. The juror himself was not able to point to any specific publicity during the trial. On this basis, we find that there was no abuse of discretion by the trial court in denying the motion for a new trial.[3]

Estes' last challenge concerns alleged error in sentencing by the trial judge. As already mentioned, the trial judge sentenced Estes to consecutive terms of five years. On the same date, Estes was taken into custody on a parole violator's warrant. The government then filed a motion seek-

---

**3.** Additionally, under Rule 606(b) of the Federal Rules of Evidence, although a juror may testify as to whether extraneous prejudicial information was improperly brought to his attention, a juror is incompetent to testify as to the effect of anything upon his mind as influencing him to assent to the verdict. Regardless, then, of whether any information was improperly brought to the juror's attention, Rule 606(b) would render incompetent his testimony that he was influenced by newspaper accounts.

ing a clarification as to whether the above sentence would run concurrently or consecutively to any sentence Estes might receive upon the revocation of his parole. Shortly thereafter, the trial court ordered that Estes' ten-year sentence shall run consecutively to any sentence he might receive as a result of parole revocation. Estes contends on appeal that his punishment. has been enhanced without his being present and without a hearing. Estes points out that the warrant for his parole violation was issued subsequent to his sentencing in this case. Further, the court's order clarifying this point was entered nearly one month after Estes was to report to the marshal's custody.

 Although this court believes that Estes may have a valid argument on this point, *see, e. g., Causey v. Civiletti,* 621 F.2d 691, 693 n.2 (5th Cir. 1980) (in the absence of dispositive language in the sentencing order, there is a general presumption that sentences are to run concurrently); *Schultz v. United States,* 384 F.2d 374, 375 (5th Cir. 1967) (increasing a sentence after defendant has commenced to serve it is a violation of double jeopardy), we believe that the issue should be raised initially in the trial court on a motion for reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.[4] *See United States v. Weiner,* 418 F.2d 849, 851 (5th Cir. 1969).

In summary, after a thorough reading of the record and examination of the exhibits, this court finds no error in the conviction of the appellants and affirms the trial court's judgment. The case is remanded solely to allow Estes to present his motion for reduction of sentence pursuant to Rule 35.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

---

4. Rule 35 of the Federal Rules of Criminal Procedure provides in pertinent part:

The court may correct an illegal sentence at any time and may correct a sentence im-

posed in an illegal manner within the time provided herein for the reduction of sentence.