UNITED STATES of America, Plaintiff-Appellee,

v.

Robert L. GRAPP and William Kenneth Thatcher, Defendants-Appellants.

No. 79–5468.

United States Court of Appeals, Fifth Circuit. Unit A

Aug. 10, 1981.

Rehearings Denied Oct. 6, 1981.

Lewis O. Unglesby, Baton Rouge, La. (Court-appointed), for Grapp.

Jordan Green, Edward F. Novak, Phoenix, Ariz., for Thatcher.

Donald L. Beckner, U.S. Atty., Mitchell B. Lansden, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before BROWN, GEWIN * and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

William Kenneth Thatcher and Robert L. Grapp were indicted for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a) & (c), mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and RICO conspiracy, 18 U.S.C. § 1962(d). They were also charged under the aiding and abetting provision, 18 U.S.C. § 2, and for false declarations before a grand jury, 18 U.S.C. § 1623. The false declarations counts were severed and the government dismissed the mail fraud charged in Count 7. The defendants were tried on Counts 1–6 and 8–11,[1] and the jury returned verdicts of guilty on all counts. Thatcher and Grapp were sentenced to three years imprisonment on Count 1 and five years probation on Count 2. The imposition of sentence was suspended on all other counts. On appeal both claim the trial court erred in denying motions to sever, in making certain evidentiary rulings, and in refusing to instruct on Thatcher's defense of alibi. Both claim a variance between indictment and proof and assert prosecutorial misconduct in statements to the jury. In addition, Grapp contends the district court erred when it declined to strike portions of the indictment before permitting the jury to take it into the jury room during deliberations. Finding no reversible error in any contention, we affirm.

In 1973 Thatcher and Grapp were employed by Honeywell Information Systems, Incorporated which furnished computer equipment to the State of Louisiana. Grapp left his employment with Honeywell in mid–1973, when the State terminated the contract it then had for computer consultation services, and formed Public Systems, Incorporated (PSI) in order to provide similar consulting services. The State then contracted with PSI for these services. Grapp was a director and president of PSI and owned 30% of its stock; Edward Malo and Richard Robertson were directors and officers of PSI and each was a record owner of 30% of its stock.

The government charged that Malo secretly acted as a nominee stockholder for Thatcher, for which he was to receive 20% of Thatcher's stock. The secret nominee arrangement was necessary because

---

* Due to his death on May 15, 1981, Judge Gewin did not participate in this decision; the case is being decided by a quorum, 28 U.S.C. § 46(d).

1. Both were named in each count except Count 8, which named only Grapp.

Thatcher was required to make full disclosure of ownership in any company with which Honeywell did business. This nominee arrangement, an essential element of the government's case, was denied by Thatcher and was a vigorously contested factual issue.

In late 1973 the State entered into an agreement with Honeywell for the purchase of computer equipment for $6,607,094. Honeywell, through Thatcher, offered a $500,000 discount if payment was made or third party financing was arranged before a certain date. Commissioner Charles E. Roemer II, head of the State agency responsible for arranging such purchases, was under the impression that $6,607,094 represented the price after applying the $500,000 discount. This discount offer was later withdrawn by Thatcher's superior at Honeywell.

During 1974 Grapp and Thatcher continued their efforts to secure a profitable arrangement between the State and Honeywell, notably involving a subsidiary of PSI, Capital Analytics. Thatcher's ownership remained undisclosed. Subsequently, the State contracted for the purchase of various computer equipment from Honeywell. In the spring of 1975 the State accepted bids for the financing of a third-party lease of some of this equipment. In May 1975 Thatcher's superiors advised him that Honeywell was reinstating the offer of the $500,000 discount, but on a different computer than that originally proposed. Thatcher informed Roemer who thought the discount could be applied to the original computer and continued under the misimpression as to the price. Ultimately a bid by PSI was accepted.

PSI arranged to have the $6,607,094 paid into its account instead of to Honeywell. PSI then transmitted $6,084,539 to Honeywell, retaining $522,555 as "profit."[2] Neither the State, Honeywell, the financial institution providing PSI with the funds nor the company acquiring PSI's position were informed that PSI retained this sum.

Thatcher's superiors at Honeywell were not aware that the discount had been applied to the PSI transaction.

PSI's retention of the $522,555 was not publicly revealed until 1977, at which point Thatcher urged Malo not to reveal the nominee stock arrangement. Malo initially complied with Thatcher's request but later recanted and gave the authorities, including the grand jury, a candid account of his knowledge of the transaction.

Thatcher denied the nominee stock relationship and denied informing Grapp about the discount prior to the closing. He further testified that he thought the discount had gone to the State and not to PSI.

*Severance*

Thatcher and Grapp contend that denial of their motions to sever constitutes reversible error. Both originally based their motions on allegations of antagonistic defenses. When it became apparent that Grapp would probably not testify, Thatcher again moved for a severance contending that he needed the exculpatory testimony Grapp could provide. Thatcher's appeal on the severance issue is based on the latter contention.

Rule 14 of the Federal Rules of Criminal Procedure authorizes the trial court to grant severances when "it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . for trial together." The question of severance is a matter within the sound discretion of the trial judge, *United States v. Salomon*, 609 F.2d 1172 (5th Cir. 1980), and we are hesitant, as a reviewing court, to second guess the trial court's refusal to sever. *United States v. Marino*, 617 F.2d 76 (5th Cir. 1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Absent a showing of abuse of discretion, the trial court's decision will not be disturbed. *United States v. Bolts*, 558 F.2d 316 (5th Cir.), *cert. denied*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977). "In order to demonstrate abuse of

---

**2.** A substantial portion of these funds were used by Grapp to purchase, capitalize, and operate an Arkansas company known as Polytech Systems.

discretion, the defendant bears a heavy burden of establishing compelling prejudice." *United States v. Salomon*, 609 F.2d at 1175. Severance should be granted only when the defendant can demonstrate compelling prejudice which the trial court could not alleviate. *United States v. Horton*, 646 F.2d 181, 186 (5th Cir. 1981), *citing United States v. Crawford*, 581 F.2d 489 (5th Cir. 1978). "Severance is allowable when antagonistic defenses are present, but the conflict must reach a point where the defenses are irreconcilable and mutually exclusive." *Horton*, 646 F.2d at 186.

■ One seeking a severance on the grounds that he needs the testimony of a co-defendant must demonstrate:

(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed.

*United States v. Butler*, 611 F.2d 1066, 1071 (5th Cir.), *cert. denied*, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1981).

■ Thatcher did not meet these requirements. There was no indication that Grapp would "in fact testify if the cases [were] severed." *Id.* Thatcher recognizes that there was no assurance that Grapp would testify; he relies on the assumption that a severed co-defendant is more likely to testify and on other considerations which he suggests, make it "reasonably certain Grapp would testify."[3] Thatcher's argument is not persuasive. Where "there is no showing that there is anything more than a gleam of possibility in the defendant's eye," the court is not required to sever. *United States v. Wilson*, 500 F.2d 715, 721 (5th Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

Further, Thatcher did not demonstrate that Grapp's testimony would be as exculpatory as Thatcher might hope. The proffered testimony was that which led to Grapp's indictment for false declarations. We are not prepared to label as an abuse of discretion the trial court's refusal to sever because of such testimony.

■ Grapp contends his trial should have been severed in order to avoid the prejudice he suffered as a consequence of Thatcher's defense. He contends that the cross-examination of government witnesses by Thatcher's attorney, and the testimony of witnesses Thatcher called, worked to his prejudice. When antagonistic defenses are claimed, severance is mandated only when "the defenses are irreconcilable and mutually exclusive." *United States v. Horton*, 646 F.2d at 186. This degree of conflict was not reached in the instant trial. The defenses of Thatcher and Grapp differed, but they were not irreconcilable.

Grapp's reliance on *United States v. Crawford*, 581 F.2d 489 (5th Cir. 1978), wherein we held that severance was required because the sole defense of each was the guilt of the other, is misplaced. Grapp does not base his defense on Thatcher's guilt. Rather, he takes the position that the transaction was a legitimate business deal with the $522,555 earned as a trade discount. Nor does Thatcher rely on Grapp's guilt. Thatcher insists that he was acting in the best interest of the State and Honeywell, that he did not own an interest in PSI, and that he was unaware of PSI's retention of the discount.

Unlike the situation in *Crawford*, the witnesses in the case before us showed no hostility to Grapp. While questions by Thatcher's counsel during cross-examination did indirectly inculpate Grapp, the obvious thrust of the questions was the exculpation of Thatcher. These few questions and answers did not create the "inherently prejudicial conditions" which made imperative a severance in *Crawford*. 581 F.2d at 492.

---

**3.** Thatcher points to the following factors as support for his contention: (1) Grapp considered testifying at the joint trial; (2) he had no prior convictions to be used against him; (3) the crimes alleged were "white collar crimes" which often require the testimony of the defendant to explain the intent involved; and (4) the charges still facing Grapp could best be buttressed by placing his credibility at issue.

### Exclusion of Evidence

■ Thatcher sought permission to read to the jury testimony given by Grapp on the occasion of his appearance before a legislative audit committee, when he gave a deposition in a pending civil case and when he appeared before the indicting grand jury. Thatcher's argument to the trial judge was that this evidence was an exception to the hearsay rule and was admissible as a statement against interest under Rule 804(b)(3) of the Federal Rules of Evidence. Thatcher sought to use Grapp's prior statements to impeach government witnesses.[4]

■ There is no merit to the contention that the prior statements of Grapp, who did not testify, are admissible under Rule 804(b)(3). We are not prepared to make that same ready assessment of the argument, first raised on appeal, that the statements should have been admitted under Rule 806 of the Federal Rules of Evidence.[5] This contention was not presented to the trial court, and we do not consider it here.

■ As a general rule, a reviewing court will only consider those matters first raised in the trial court. There are exceptions. In *Anderson v. United States*, 417 U.S. 211, 217 n.5, 94 S.Ct. 2253, 2258, n.5, 41 L.Ed.2d 20 (1974), the Supreme Court stated that an appellate court may consider any proper basis for an objection to evidence, including one not articulated at trial. The *Anderson* rationale is not applicable here. We are not asked to consider an unspoken basis for an objection to evidence. We are presented with a new, previously unasserted basis for the admissibility of evidence. Further, considering the totality of the record in this case we are not persuaded that the trial judge's rulings on the proffered evidence were "errors seriously affecting the fairness or integrity of [these] judicial proceedings," *id.*, thus justifying the exception to the general rule.

### Alibi Defense

■ Thatcher cites as reversible error the trial judge's refusal to instruct the jury on an alibi defense.[6] If it is error, it is harmless.

As one of the multiple predicate offenses underlying the RICO charges, the indictment alleged that *"on or about* the 27th day of May, 1977" (emphasis supplied) Thatcher tried to prevent Malo from communicating with the authorities about the violation of criminal statutes. Based on his belief that the Government would present evidence that he met with Malo in Chicago *on* May 27, Thatcher presented an alibi defense targeted on May 27. The evidence offered by the government, however, did not specify the date or the month that Malo met with Thatcher. Malo testified that he met with Thatcher in "the middle of 1977." When Thatcher requested an alibi instruction, the judge refused, pointing to the "on or about" language in the indictment. The court charged the jury that the evidence would be sufficient if it established that the offense was committed on a date reasonably near the date alleged. As discussed *infra*, this was a correct charge.

4. In his appellate brief Thatcher first asserts that the evidence was relevant to impeach the credibility of government witnesses. In his reply brief he states that the evidence was needed to impeach Grapp's credibility, an adjustment in stance apparently resulting from a reconsideration of Rule 806, Fed.R.Evid.

5. Rule 806, Fed.R.Evid. provides:
    When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

6. Grapp also assigns error to this ruling by the trial judge on the basis that as a co-conspirator he was jointly responsible for the acts and statements of Thatcher and the defense of a charge would inure to his advantage.

The rule governing the refusal to charge the jury on a theory of defense is well-settled. Reversible error occurs when there is an evidentiary foundation for the defense and the defense would be legally sufficient to warrant an acquittal if believed by the jury. *United States v. Lewis*, 592 F.2d 1282 (5th Cir. 1979). Examining the requisites in reverse order we find that no such defense was presented in this case. Assuming the jury believed that Thatcher did not meet Malo in Chicago on or about May 27, 1977, Thatcher would still be vulnerable to the RICO charges. The alibi defense related to only one of the many predicate offenses underlying the RICO charge. A RICO conviction requires proof of two predicate crimes. A failure of proof on any additional predicate offenses would eliminate only a surplus finding, it would not change the resultant conviction.

### Variance

Thatcher, and by adoption Grapp, claim a fatal variance between the indictment and the proof. The indictment charges "on or about May 27, 1977," and the evidence refers to the middle of 1977. It is asserted that this variance results in substantial prejudice mandating a reversal. We do not agree.

Evaluating a claim of variance requires the positing of two inquiries: (1) did a variance exist, and (2) was it in fact prejudicial. *United States v. Phillips*, 625 F.2d 543 (5th Cir. 1980). The instant evaluation does not go beyond the first question. The prosecution, as a consequence of the use of the "on or about" designation, was not required to prove the exact date; it suffices if a date reasonably near is established. As we stated in *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970):

> It seems well settled that an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, 'within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'

Were we to agree that a variance existed, under the circumstances extant in this case it is manifest that no prejudice resulted. Deletion of one or more predicate offenses, provided that at least two remain proven, would not alter or vitiate either a RICO substantive or RICO conspiracy conviction.

### Statements by the Prosecution

Appellants contend that the prosecutor overstepped the legitimate bounds of zealous representation during his closing argument by making several statements that the defendants classify as improper bolstering of a witness's credibility. We agree that the prosecutor could have and should have been more careful and circumspect in his choice of words. However, when we consider the totality of the closing argument and the context in which the challenged statements were made, as well as the cautionary statements by the trial judge, we do not find reversible error.

An attorney may not express his personal beliefs about the evidence or the witnesses, but he may point out to the jury his contentions as to what conclusions the jury may draw from the evidence. *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978). The prosecutor in this case used the phrases "I think," "I feel," and "I believe." The phrases were used as part of statements analyzing the evidence. The most nettlesome comment made by the prosecutor occurred during rebuttal, when he said:

> Quickly, going back to Mr. Malo, because evidently the defense felt it was so important. As I said, I feel he was a very credible witness . . . .

This statement was improper; prosecutors should painstakingly avoid such phraseology. The defendants were not prejudiced, however, because the trial judge immediately instructed the jury that counsel's statements were not evidence and could not be considered in reaching a verdict. *Id.* at 403. The prosecutor also emphasized that point in his arguments to the jury. Furthermore, the statement was made during rebuttal when a prosecutor may "present what amounts to a bolstering argument if it

is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon ... his witnesses." *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981).

Any error that may have resulted from the intense argument by the prosecutor must be viewed as harmless. Our review of the entire record convinces us that the rights of the defendants were protected.

### Surplusage in Indictment

Grapp contends that the trial judge committed reversible error when he refused to strike from the indictment those allegations that had not been proven at trial. His contention is without merit. Although the trial judge has the authority to strike unsubstantiated portions of an indictment, *United States v. Musgrave*, 483 F.2d 327 (5th Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 316 (1973), the judge is under no duty to do so either *sua sponte* or upon motion by a defendant.

The convictions of William Kenneth Thatcher and Robert L. Grapp are AFFIRMED.