[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14998
Non-Argument Calendar

_____

D. C. Docket No. 04-00001-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LA WANDA NALL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 29, 2005)

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

LaWanda Nall appeals her convictions and sentences for mail and wire

fraud, in violation of 18 U.S.C. §§ 1341 and 1343.  For the reasons that follow, we affirm.

I. Background

A federal grand jury sitting in the Northern District of Florida charged Nall by superseding indictment with eight counts of mail fraud, in violation of § 1341, and two counts of wire fraud, in violation of § 1343, in connection with an alleged insurance fraud scheme. According to the indictment, Nall removed property from her two businesses on Palafox Road and Hood Drive in Pensacola, Florida, reported the items stolen during burglaries, and filed a false insurance claim with her insurance carrier, State Farm, for reimbursement.  Count 7[1] charged that on or about August 15, 2002, Nall mailed a letter pertaining to a revocation of settlement to State Farm agent Thomas Wood in Jacksonville, Florida.  Count 8 charged that, on or about August 20, 2002, Nall mailed a response to the denial of her insurance claim to Wood in Jacksonville.

During opening argument, defense counsel stated that the crux of the case was whether the government could prove that Nall removed the property from her own businesses because there was no false insurance claim unless the burglaries were a hoax.

---

[1]  Nall challenges venue with respect to the mail fraud offenses in Counts 7 and 8, and, therefore, only those counts are discussed in detail.

The testimony at trial including the following facts. Nall retained insurance coverage through State Farm for her two businesses. At one point, Nall's coverage had been suspended for lack of payment, and Nall came to the agency very upset and worried about what would have happened had her businesses been robbed while the policy was suspended. This occurred about three days before Nall filed her claim for property loss during the first burglary at Palafox Road in which Nall reported missing paperwork, files, and computer items.[2] The business appeared to be "ransacked," although some valuable items were not taken. Nall had informed authorities that the doors and windows had been secured and the alarm set when she left the office. About a month after the Palafox burglary, Nall reported that her car was broken into and a key ring was stolen, which included a key to the Hood Drive office. A few days after that, Nall reported that her office on Hood Drive was burglarized. Several weeks later, some of the items stolen were found at the Hood Drive office and at a storage shed allegedly rented by Nall under another name. The crime scene investigation at the Hood Drive property found no fingerprints on the door, lock, or windows, and there were no signs of forced entry. Nall's landlord, Ray Houk, had given Nall two keys to the property and he had one key that he had never used.

---

[2] Nall alleged that a man by the name of Dr. Yates was responsible for the theft because the files that were missing related to a lawsuit between herself and Yates.

State Farm fraud investigator Keith Pearce was brought in to investigate after State Farm claims agents became suspicious about the burglaries. He found Nall's stories about whether the doors had been locked, the windows closed, and the alarm set, to be inconsistent. Pearce had the Hood Drive lock removed and sent to locksmith Richard Pacheco for analysis, and he also sent the three keys he obtained from Nall and Houk. According to Pearce, neither the locksmith who removed the lock nor any police officer tested the keys in the lock before Pearce sent the lock for analysis because Pearce wanted the locksmith to be able to check the lock for tampering knowing that no other key had been used since the break-in.

Thomas Wood, manager of State Farm's investigation unit, received a letter from Nall on August 20, 2002 in response to a denial letter State Farm sent to Nall. The letter was postmarked in Montgomery, Alabama with a Castleberry, Alabama return address, and was received in the Jacksonville office. The postal service would pick up the mail from Castleberry and take it to the processing center in Montgomery. Once in Montgomery, the mail would travel to Jacksonville with an intermediate stop in Tallahassee, but mail addressed and processed for Jacksonville would not leave the truck in Tallahassee.

The government notified Nall of its intent to call Pacheco as an expert to testify to the condition of the lock at the Hood Drive property. Pacheco had

4

submitted a report after examining the lock, but the government later informed Nall of its intent to question Pacheco on whether he could identify which key was the last one used to open the lock. The government asserted that this opinion was necessary after Nall's opening argument that someone had stolen a key to the Hood Drive office from her car. Nall objected to the new testimony because she had not been given advance notice of this opinion. The court overruled Nall's objection, finding that, even if the expert could not testify beyond the scope of his report on direct examination, he could testify further in rebuttal. The court warned Nall that if she opened the door, the testimony would be admissible.

In his testimony, Pacheco explained that he had conducted a microanalysis examination of the Hood Drive lock, but that he did not find any signs of tampering. He also checked the three keys he had been given for signs that duplicates had been made and found that none of the keys had been used to make copies recently. Pacheco then explained that he had not been asked originally to determined which key was last used in the lock, but that he had done so later upon request. Describing the technique used, Pacheco testified that he could determine that the last key used was one of the keys in Nall's possession.

After the government rested its case-in-chief, defense counsel moved for judgment of acquittal, asserting, inter alia, that the government had not established

5

proper venue with respect to Counts 7 and 8 because the mere fact that Nall's letters traveled by mail through Tallahassee in the Northern District of Florida on its way to Jacksonville in the Middle District of Florida was not sufficient to establish venue in the Northern District of Florida. The court denied the motion.

Nall then called several defense witnesses, including her parents. Earlene and Charles Nall each testified that they had spoken with their daughter the day of the burglary at the Palafox office, and that Nall had called them from her home at about 10:30 p.m. according to the caller id. They further testified that they were with Nall when the Hood Drive burglaries were discovered. Nall testified in her own defense, asserting that Houk had given her three keys - rather than two - to the Hood Drive office. Additionally, Nall testified that when the locksmith removed the lock from the door, he tested the keys to see if they opened the lock. After putting forth its rebuttal witnesses, the government rested. Nall renewed her motion for judgment of acquittal, which the court again denied.

During closing argument, Nall asserted that she was not responsible for the burglaries, and counsel informed the jury that the court would instruct that there was some evidence to suggest that Nall had an alibi for the times of the burglaries. Although the court initially agreed to give the alibi instruction, upon further consideration the court determined that the instruction was not appropriate because

6

Nall was not charged with burglary. The court noted that the indictment listed that the offense occurred "on or about" a certain date, and, therefore, Nall's whereabouts at specific times was not relevant.

The court instructed the jury that good faith was a complete defense to the fraud charges and that the government did not have to prove the offenses occurred on a specific date or time. The court also reminded the jury that Nall was only on trial for those offenses listed in the indictment. Nall objected to the court's failure to give the alibi instruction. The jury convicted Nall on all counts.

The probation officer prepared a presentence investigation report ("PSI") using the 2000 edition of the manual, and calculated the adjusted offense level with enhancements for obstruction of justice and more than minimal planning. With a total offense level of 19 and a criminal history category I, the guidelines range was 30 to 37 months imprisonment. Nall objected to the enhancements and the amount of loss attributed to her, she challenged the guidelines under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and she requested a downward departure based on her medical condition.

At sentencing, the court overruled the objections and determined that Nall's medical condition was not sufficient to warrant a departure, but that even if it was, the court would decline to depart downward. The court then sentenced Nall to 33

7

months imprisonment, stating that the middle of the guidelines range was appropriate to punish Nall and deter future conduct. The court also stated that, if the guidelines were found to be unconstitutional, it would impose the same sentence.

II. Nall's Arguments

On appeal, Nall raises four issues: (1) the court erred by denying judgment of acquittal on Counts 7 and 8 because the government failed to establish venue; (2) the court improperly permitted Pacheco's testimony because the government failed to disclose the opinion prior to trial; (3) the court erred by failing to instruct the jury on her alibi defense; and (4) her sentences must be vacated and remanded in light of United States v. Booker, 543 U.S. – 125 S.Ct. 738, 160 L.Ed.2d 621.[3]

A. Venue

Nall argues that the government failed to establish venue with respect to Counts 7 and 8 because the fact that the mail truck passed through the Northern District of Florida is insufficient to establish venue in that district when the mail was not sent from, nor delivered to, the Northern District of Florida.

We review de novo the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government. United States v.

---

[3] This court now reviews Blakley arguments under Booker.

8

<u>Descent</u>, 292 F.3d 703, 706 (11th Cir. 2002).

"Venue for a mail fraud conviction is proper in any of the districts from, through, or into which the item of mail moved." 18 U.S.C. § 3237(a); <u>United States v. Martino</u>, 648 F.2d 367, 400 (5th Cir. 1981).[4] The government's burden to establish venue is less difficult than the burden required for proof of an element of a crime, and venue need only be proven by a preponderance of the evidence. <u>Martino</u>, 648 F.2d at 400.

The testimony at trial established that the two letters Nall mailed to Wood traveled from Alabama to Jacksonville by going through Tallahassee, which is in the Northern District of Florida. Therefore, the government met its burden of establishing venue, and the district court properly denied the motion for judgment of acquittal.

B. Expert Testimony

Nall next argues that the court erred by admitting Pacheco's testimony because the testimony offered at trial differed from the opinion disclosed in the pre-trial report and that she was prejudiced by the additional testimony. Nall asserts that Pearce's testimony established that the government knew the

---

[4]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (<u>en banc</u>), this court held that all decisions handed down by the old Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

importance of this testimony earlier than it disclosed.

We review the district court's decisions regarding the admissibility of expert testimony for abuse of discretion.[5] United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004), cert. denied, 125 S.Ct. 2516 (2005).

Here, Nall does not challenge the admissibility of Pacheco's opinion under Rule 702,[6] but rather asserts that it was error to admit the testimony regarding the last key used in the lock because the government failed to notify Nall of its intent to use this opinion, as required by Fed.R.Crim.P. 16.

The pertinent portion of Fed.R.Crim.P. 16 provides: "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed.R.Crim.P. 16(a)(1)(G) (emphasis added). This court has held that "consistent with the plain language of the Rule, the government's presentation of rebuttal testimony without

_____

[5] The government contends that plain error review is appropriate because counsel did not object to the admission of Pacheco's opinion. A review of the record, however, shows that Nall objected to the admission of Pacheco's opinion regarding the last key used, but appears to have conceded the admissibility of Pacheco's other opinions. Accordingly, the proper standard of review is abuse of discretion.

[6] Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

10

prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief." Thus, so long as this testimony was properly characterized as rebuttal, Rule 16 did not require the government to give notice or a summary of the testimony. United States v. Frazier, 387 F.3d 1244, 1269 (11th Cir. 2004). Moreover,

> [v]iolations of Rule 16 will result in a reversal of conviction only if such a violation prejudices a defendant's substantial rights. . . . In determining the proper remedy for the government's violation of discovery rules, the court must consider 'how the violation affected the defendant's ability to present a defense.' In other words, actual prejudice must be shown.

United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999); see also United States v. Tinoco, 304 F.3d 1088, 1119-20 (11th Cir. 2002).

Here, the government offered Pacheco's testimony on the last key used during its case-in-chief even though the testimony was offered as rebuttal to Nall's opening statement that she was not responsible for the burglaries. Under the plain language of the rule, therefore, the government violated Rule 16.

Nevertheless, we conclude that Nall suffered no prejudice from this violation. As noted, Pacheco's testimony that her key was the last key to be used was relevant to rebut Nall's defense. Moreover, at trial, Nall conceded that her key was the last key used, and she proffered testimony that the locksmith had tested her keys in the lock before it was sent to the expert for examination. Therefore, as she

11

conceded the point that her key was the last one used, she cannot show how she was prejudiced by Pacheco's testimony.

Additionally, the testimony at trial did not establish that the government knew of the importance of this opinion earlier than it disclosed. Contrary to Nall's argument, the testimony established that Pearce wanted the expert to examine the lock knowing that no key had been used since the burglary. At that point, the issue presented to the jury was a question of which witnesses it found more credible - Pearce, who testified that no one tested the keys, or Nall and her witnesses who testified that Pearce and the locksmith did test the keys. As witness credibility is the sole province of the jury and will not be disturbed by this court, United States v. Kelley, 412 F.3d 1240, 1247 (11th Cir. 2005), Nall cannot show how she was prejudiced by Pacheco's testimony.

### C. Jury Instructions

Nall argues that the court erred by denying her alibi defense after it originally stated that it would so instruct the jury. She explains that the basis of her defense rested on the notion that she did not commit the burglaries.

"This court reviews a district court's refusal to give a proposed jury instruction for an abuse of discretion." United States v. Polar, 369 F.3d 1248, 1252 (11th Cir. 2004); United States v. Futrell, 209 F.3d 1286, 1288 (11th Cir. 2000).

12

The refusal to give a requested instruction is reversible error "only if (1) the instruction is substantially correct, (2) the instruction was not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." Polar, 369 F.3d at 1252; see also United States v. Grapp, 653 F.2d 189, 195 (5th Cir. 1981).

Here, the district court did not abuse its discretion, as the alibi instruction was not appropriate under the facts of the case. Where the government is not required to prove that the defendant was present at a particular time or place, an alibi defense is not relevant. See United States v. Lee, 483 F.2d 968, 970 (5th Cir. 1973) (holding that alibi instruction was not proper in conspiracy case because government did not have to prove the defendant was present at the time the co-conspirators engaged in one of the overt acts in furtherance of the conspiracy).

In this case, Nall was not charged with burglary, although the burglary was relevant to whether she submitted false insurance claims. The alleged alibi does not establish that Nall had no involvement with the burglaries or that she did not submit false claims to State Farm. Even if the jury believed Nall's alibi defense, it could have found Nall guilty of the insurance fraud, and therefore, the requested instruction was not appropriate.

To the extent that Nall argues that the court erred because it originally

13

agreed to give the instruction, but later determined the instruction to be improper, this argument fails. Under Fed.R.Crim.P. 30, the court is required to "inform counsel of its proposed action upon [counsel's requested jury instructions] prior to their arguments to the jury." Fed.R.Crim.P. 30. A conviction will be reversed for a violation of this rule only if the defendant can show prejudice. United States v. White, 27 F.3d 1531, 1538 (11th Cir. 1994). Prejudice exists where "the change in the instructions is substantial, when the judge's instructions repudiate counsel's argument, or when the judge's instructions impair the effectiveness of the attorney's argument." Id.

Here, even if the court erred, reversal is not warranted because there was no prejudice. Nothing in the court's instructions repudiated counsel's argument that Nall did not commit the burglary. Nor did the instructions impair the effectiveness of the argument. The court's instructions to the jury included an instruction that good faith was an absolute defense to the charges. At no time did the court repudiate counsel's alibi theory. Therefore, there was no prejudice requiring reversal.

### D. Booker

Finally, Nall argues that her case must be remanded for resentencing in light of Booker. Although she acknowledges that the court stated that it would impose

14

the same sentence without mandatory guidelines, Nall asserts that the court should have the opportunity to review its decision on the enhancement for more than minimal planning.

Because Nall preserved her Booker challenge in the district court, we review the sentences de novo, but will reverse only if the error was not harmless. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). The burden is on the government to show that the error was harmless and there are two standards for the harmless error test. To show that a constitutional error was harmless, the government must show that the error did not affect the defendant's substantial rights, or in other words, "where it is clear 'beyond a reasonable doubt that the error complained of did not contribute to the [sentence] obtained.'" United States v. Mathenia, 409 F.3d 1289, 1291-92 (11th Cir. 2005). To show statutory harmless error, the government faces a less demanding standard but must show that, viewing the proceedings in their entirety, the error had no effect or a very slight effect on the sentence. Id.

Here, Nall received extra-verdict enhancements and was sentenced under a mandatory guidelines scheme; thus, the government must show that the error did not effect Nall's substantial rights.[7] At sentencing, the court stated that it would

_____

[7] If the government can meet this burden for the constitutional error, then it would also meet the less onerous burden of showing that the statutory error was harmless.

15

impose the same sentence even if the guidelines were not mandatory.  See United States v. Phillips, 413 F.3d 1288, 1293 (11th Cir. 2005) (concluding that any error was harmless when the court stated it would impose the same sentence absent mandatory guidelines); United States v. Petho, 409 F.3d 1277, 1280 (11th Cir. 2005); United States v. Robles, 408 F.3d 1324, 1327 (11th Cir. 2005).  Therefore, we conclude that the government has established that the error was harmless.

III. Conclusion

For the foregoing reasons, we AFFIRM Nall's convictions and sentences.