**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James W. RICKS, Defendant-Appellant.**

**No. 79-5728.**

United States Court of Appeals, Fifth Circuit. Unit B

March 19, 1981.

Oliver Harris Doss, Blue Ridge, Ga., W. Courtney LaFon, Roswell, Ga., for defendant-appellant.

Denver L. Rampey, Jr., U. S. Atty., Macon, Ga., John C. Winkfield, Robert J. Er-ickson, Attys., Crim. Div., Appellate Sec., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and TUTTLE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

James Ricks appeals a jury conviction for conspiracy to possess with intent to distribute approximately 1,000 pounds of marijuana. 21 U.S.C. §§ 841(a)(1) and 846. He raises the following arguments:

    1. The trial court violated Federal Rule of Criminal Procedure 32 in ruling that a presentence investigation report was unnecessary.

    2. The trial court erred in relying on previous trial testimony from a separate defendant's trial in making its determination that the extra-jury hearing said to be mandated by *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), need not be held.

    3. The prosecutor improperly insinuated personal knowledge of the defendant's guilt, thereby causing the defendant substantial prejudice.

    4. The trial court failed to advise the defendant of his right to take this appeal.

    5. The trial court erred in denying defendant's motion for change of venue. He argues this motion should have been granted because of prejudicial, pre-trial publicity.

*See* Defendant's Brief, at 9, 13, 16, 19, 21. The appellant does not challenge the sufficiency of the evidence to convict him. We turn first to appellant's second contention, in part to clarify the requirements of *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc).

### I. *The History and Holding of James*

    When a witness offers to testify as to what some other person has said, out of court, that offer is questionable under rules of evidence excluding hearsay. However,

what has been said by one who has been a conspirator with the defendant, during and in furtherance of the conspiracy is, by definition, not hearsay. Fed.R.Evid. 801(d)(2)(E).

Therefore, the predicate for the admission of such a statement is that a conspiracy existed; that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy; and that the statement was made during the course and in furtherance of the conspiracy. 590 F.2d at 581.

■ The burden of proving this necessary predicate is upon the party offering the statement in evidence. Here, and in almost all conceivable situations, that burden is upon the government. The burden is to prove the predicate facts.

Until 1978, our circuit placed the predicate fact finding duty upon the jury and appeared to require the jury to require for proof of the predicate facts the same proof beyond a reasonable doubt as required for all other proof of guilt in a criminal case. *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973).

On July 20, 1978 a panel of this court released its opinion in *United States v. James*, 576 F.2d 1121 (5th Cir. 1978). The court held that the responsibility of determining whether or not the predicate facts have been proved rests upon the trial judge who is to make that finding based upon his determination as to where a preponderance of the evidence lies. The panel also held that the judge could not allow the jury to hear a coconspirator's declaration until he had determined admissibility by a preponderance of the evidence. Thus, the panel required the government to develop its proof of the predicate facts before tendering a coconspirator statement or make such proof at an extra-jury hearing. 576 F.2d at 1131.

■ Subsequently, the panel's opinion was modified. *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc). The ultimate teaching, however, remained unchanged: when all evidence on the issue has been received, considered and weighed, and it appears from a preponderance of the evidence that the predicate facts exist, there is no error in the admission of the statements of coconspirators. 590 F.2d at 582.

As had the panel, the en banc court recognized dangers to fair trial that might exist in dealing with statements of alleged coconspirators and announced some preference as to how trial procedures might be structured to guard against those dangers. To reveal to the jury what someone has said, out of court, incriminating the defendant is strong medicine. Should such a revelation be made and it then appear that no facts existed justifying the revelation, the defendant would have been unlawfully and most seriously prejudiced. The waste of mistrial would be likely; restoration of fairness through corrective instruction would be difficult if possible at all.

■ The en banc court fashioned the following response to these concerns. It held that a trial judge should not admit proof of such out of court statements unless he finds substantial, independent evidence of the predicate facts, at least enough to take the question to the fact finder. *Id.* at 581. The en banc court instructed:

Both because of the 'danger' to the defendant if the statement is not connected and because of the inevitable serious waste of time, energy and efficiency when a mistrial is required in order to obviate such danger, we conclude that the present procedure warrants the statement of a preferred order of proof in such a case. The district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator. If it determines it is not reasonably practical to require the showing to be made before admitting the evidence, the court may admit the statement subject to being connected up.

*Id.* at 582.

By following these instructions, trial judges can avoid *some* of the dangers. It

can readily be seen, however, that even this order of proof is not fool proof. It requires the government to show that it has substantial, independent evidence of the predicate facts before the statements are disclosed to the jury. There remains the possibility, that when the judge has heard all the evidence, including the defendant's, the greater weight of the evidence—the preponderance—will be found to support the proposition that the predicate facts do not exist.

It appears from records that have come to us that district judges have often been more careful than mandated by our preferred order of proof. They have, on a number of occasions, employed a pre-trial, extra-jury hearing to ascertain the evidence available on the existence of the predicate facts. To comprehend fully the utilization of this hearing procedure, which has become known as a "*James* hearing," we must again refer to the panel decision. 576 F.2d 1121.

In the panel opinion, the court declared:
Therefore, we hold that, under Rule 104(c), justice requires that the determination of the admissibility of coconspirators' declarations and any hearings necessary for the judge to make that determination *by a preponderance of the evidence* be conducted outside the presence of the jury.

576 F.2d at 1132 (emphasis added).

■ A determination of where the preponderance lies requires a measuring and weighing of all the evidence, pro and con. Therefore, before commencing the taking of evidence in the presence of the jury, district judges felt compelled to hear all evidence on the existence, *vel non*, of the predicate facts in a pre-trial hearing at the conclusion of which the judge could rule upon the admissibility of the tendered coconspirators' declarations according to his determination of preponderance. Thus did the term "*James* hearing" enter the legal lexicon.

Although the en banc court did not mandate such a hearing outside the presence of the jury, we did not forbid that procedure.

Indeed, it has at least two distinct advantages. A full hearing of all the evidence by the judge alone touching upon the issue which the judge alone is to decide is the best assurance that prejudicial hearsay will not be taken, inadvertently, before the jury. Following our preferred order of proof during jury trial can be clumsy. Often, witnesses to the existence of the predicate facts are also witnesses to the statements sought to be presented. Taking evidence from all witnesses to the predicate facts before introducing the statements, the admissibility of which depends upon those facts, can require more than one trip to the witness stand by several witnesses shuttling into and out of the courtroom.

■ It appears that trial judges in this circuit are continuing to make use of pre-trial, extra-jury hearings commenced as a result of the panel opinion and that they take at least two forms. Sometimes the "*James* hearing" will be limited to the government's proof of the predicate facts. *See United States v. Sarmiento-Perez,* 633 F.2d 1092, 1097, n.3 (5th Cir. 1980). When found to be substantial, the trial can proceed without the clumsiness of bifurcated testimony from individual witnesses. Other times, such hearings develop all evidence, pro and con, supporting or attacking the proposition that the predicate facts exist so that the judge can make a preponderance determination and avoid the danger of inadvertent mistrial. *See United States v. L'Hoste,* 609 F.2d 796, 799 (5th Cir. 1980). Trial judges may elect one or the other of these proceedings according to their own perception of the dangers of proceeding without them, and being mindful of the teaching of *James* that the improper admission of hearsay to the prejudice of the defendant can rarely be eliminated by curative or cautionary instructions.

■ Whatever be the form of the hearing, its use is merely to inform the trial judge as to whether or not the proponent of coconspirator statements has sufficient evidence that they are statements of coconspirators with the defendant, made during

the conspiracy, and made in furtherance of the conspiracy to warrant their being taken into evidence over objection.

■ There is manifestly, greater danger of error without such information being gathered before trial commences, but this sort of procedure is not mandated. If the risk is run and yet, at the end of the trial, the trial judge finds, upon appropriate motion, that a preponderance of the evidence proves the predicate facts, no error has occurred in the admission of the coconspirator statements.

## II. *The Appellant's Contentions*

■ With these observations in mind, we turn to the appeal at hand. Significantly appellant does not assert that the government did not prove, by a preponderance of the evidence, that the statements admitted were statements of coconspirators with the defendant, during and in furtherance of the conspiracy. Conceiving a *"James* hearing" to be a constitutionally mandated procedure, essential to due process, appellant argues that the denial of this pre-trial proceeding outside the presence of the jury was *per se,* reversible error. Appellant's Brief, at 13. In developing this argument, he seizes upon the reason given by the trial judge explaining his conclusion that a *"James* hearing" was unnecessary.[1] It hap-

pens that the judge had, theretofore, presided over the separate trials of two other members of the same alleged conspiracy. During these trials, the judge had heard and considered government's evidence of the existence of the conspiracy and of the roles played by various members of it. From those trials, the judge was able to conclude that he would be running no great risk of improperly receiving hearsay if statements of coconspirators were received in evidence. He had been made aware that the government had substantial evidence of the existence of the predicate facts.

There is no contention that, when all evidence had been taken, it did not preponderate in favor of the government's assertions of facts supporting the admission of the statements. Indeed, no exception is taken to the admission of any statement or declaration of a coconspirator. It is not contended that there was any reversible error in the order of proof during the trial.

The district judge committed no error in refusing appellant's motion that a *"James* hearing" be held before trial. *See United States v. Ocanas,* 628 F.2d 353, 359–360 (5th Cir. 1980).

## III. *Other Grounds of Appeal*

We have carefully reviewed the record with regard to the appellant's other four contentions. They are without merit.

---

1. Prior to trial the appellant requested a *James* hearing. Record, Vol. II, at 44. The district judge denied this request. *Id.* In his so doing the following colloquy occurred:

   MR. BERKOWITZ: Your Honor, the Court has heard the testimony in this case not only that the government to produce, [sic] not only once but in fact twice. The government would proffer that it expects its evidence to be consistent as it relates to Mr. Ricks, and we would ask the Court and stand by the Court withholding any ruling until after all the evidence is in. I don't see any reason for the Court to sit and listen to another *James* Hearing on this matter.
   THE COURT: I don't either. This is the third related case that we have tried. I've heard all the other evidence in two other cases. I have a *James* Hearing in one of the cases. I wouldn't see any reason to go into a *James* Hearing in this case. I'll rule on the matter as it comes up, but I don't see any purpose in it.

   Record, Vol. II, at 44.
   Later, the trial judge explained his ruling further:
   THE COURT: What the *James* Rule requires is that this Court be satisfied of the fundamentals. I'm stating a matter of fact having heard all the evidence in two other related cases we've already tried. And this Court is satisfied that the fundamentals are there. I don't see any point in this Court sitting and listening to the same evidence that I've heard three times already, over again, to reach that same conclusion. It's just a waste of the Court's time to do that. So that's the way we'll dispose of that feature of it.
   You can make any part of the record in the *Quick* case, any part of the record in the case we tried last week which was *Robinson* and so forth case, and then I'm going to hear the evidence again, I'm sure, in the trial of this case. And I'm satisfied about the fundamentals.
   Record, Vol. II, at 45–46.

We note, *sua sponte*, that since the imposition of sentence in this case, the Supreme Court has held that it is improper for a court to sentence defendants found guilty of the charged conspiracy offense to a special parole term. *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Accordingly, the district court, following the issuance of the mandate, must amend appellant's sentence to delete the special parole term.

AFFIRMED with instruction.