UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesse McCoy WHITLEY,
Defendant-Appellant.

No. 81–3432
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 19, 1982.

**618**

William C. Gray, Jr., Wilkesboro, N.C., for defendant-appellant.

Dosite H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge.

Convicted by a jury of conspiring to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, Jesse McCoy Whitley appeals, contending that the trial court erred in denying his motion to suppress evidence, in admitting hearsay evidence and in its charge to the jury. Whitley also challenges the sufficiency of the evidence and disparages the assistance of his counsel. Finding no reversible error, we affirm.

Whitley and Dennis R. McClung were jointly indicted for conspiring to possess with intent to distribute 760 pounds of marijuana. Pursuant to a plea agreement, McClung pled guilty to a charge of possession of marijuana and testified before the grand jury and as a government witness at Whitley's trial. We capsulate the facts leading to the arrest of Whitley in Lafayette, Louisiana, on August 19, 1980.

*Context Facts*

The United States Customs Service secured authorization from the court to install a transponder, an electronic tracking device, on an Aerocommander aircraft bearing FAA registration number N17BC. The aircraft was suspect because its owner had a record of arrests for marijuana smuggling, the plane had an internal fuel tank which enhanced its flight range, and it had been observed at several small airports in south Louisiana. The plane had been observed making an apparent aerial survey of unattended, remote LeGros Airport at Estherwood, approximately 35 miles from Lafayette. Customs Service officers installed the transponder on August 15, 1980, and the next day tracked the aircraft, until contact was lost, on a flight over the Gulf of Mexico on a heading to the Yucatan Peninsula.

On the night of August 16, a Customs Service officer placed the Estherwood airstrip under surveillance and observed a brown Ford one-ton pickup truck, with an enclosed cargo bed, repeatedly drive very slowly along a dirt road beside the runway. Between 11:00 p.m. and shortly after midnight, the Ford pickup made this scenic trip at least four times.

Also on August 16, agents maintaining a surveillance on the Howard Johnson's motel in Lafayette, observed McClung driving a leased Buick. At approximately 1:00 a.m. McClung, accompanied by a man identified as Jack Harper, drove from the Howard Johnson's to the Best Western motel in Lafayette where they met Whitley and an unidentified couple. McClung and Harper departed the motel in the Buick; Whitley and the unidentified man and woman left in the Ford pickup seen earlier at LeGros Airport.

On August 18, a message from "Pat" was directed to McClung at the motel. Pat, later identified as Patrick Muscarella, pilot of the suspect aircraft, advised that he would be in by 9:00 p.m. that night. That evening, anticipating a smuggling denouement, customs agents and other law enforcement personnel resumed ground surveillance of the Estherwood airfield. Around 8:30 p.m., McClung in the Buick and Whitley and two others in the Ford pickup drove onto the airstrip. The agents intercepted radio communications between the vehicles and between McClung and an aircraft which was periodically reporting its position. When the plane advised it was five minutes out, the Buick and the pickup drove to the end of the runway and parked near its edge.

At 9:00 p.m., the suspect aircraft landed and taxied to the waiting vehicles. No lights were used. The aircraft had been continually monitored and tracked from the ground and by two trailing customs' aircraft. When one of the customs' aircraft began to land the suspect aircraft quickly took off, pursued by the airborne agents. McClung posthaste departed in the Buick but was apprehended as he left the airfield. Whitley and his two companions drove the pickup to the end of the taxiway, abandoned it, and fled across the adjacent field. They were not apprehended that evening.

Approximately two hours later the airborne agents located Aerocommander N17BC abandoned in the middle of the small airstrip at Bunkie, Louisiana. The airplane's door was open, the magneto switches were on and the battery cover had been taken off. The agents found plastic bags containing 760 pounds of marijuana in the weeds adjacent to the plane and bits and gleanings of marijuana inside the plane.

Agents arrested Whitley early the next morning just after he left his motel. His pants were wet from the knees down and his shoes and clothing were covered with mud and dirt and bits of brush.

### 1. *Fourth amendment—standing*

Whitley contends that the district court erred in denying his motion to suppress the evidence obtained by use of the transponder. Whitley maintains that no probable cause existed to justify the warrant authorizing the placement of the tracking transmitter. Contending that possession of the marijuana is an essential element of the offense charged, Whitley argues that he has automatic standing under *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), to assert the fourth amendment claim. The automatic standing rule of *Jones v. United States* was expressly overruled in *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Whitley had no possessory interest in the suspect plane, which he neither owned nor occupied, and no legitimate expectation of privacy with respect to its interior. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Meyer*, 656 F.2d 979 (5th Cir. 1981); *United States v. Byers*, 600 F.2d 1130 (5th Cir. 1979). Further, Whitley's attempt to ground standing on the assertion that possession is an essential element of the offense charged is otherwise faulty. In *Byers*, 600 F.2d at 1132 (*citing United States v. Archbold-Newball*, 554 F.2d 665 (5th Cir. 1977), *cert. denied*, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1978)), we held that "possession of marijuana at the time of the seizure is not an essential element of the [offense] of conspiring to possess marijuana with the intent to distribute ...."

We do not address the question of probable cause for issuance of the warrant authorizing installation of the transponder.

Whitley has no standing to challenge that act. The motion to suppress was properly denied.

### 2. Co-conspirator testimony— James requirements

■ Citing *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), Whitley contends that the trial court erred in admitting statements by co-conspirators prior to determining that a conspiracy existed, that it involved Whitley, and that the offered statements were made during the course and in furtherance of the conspiracy. This procedure has entered the legal lexicon in this circuit, as the *James* hearing or *James* determination. Whitley insists that *James* mandates a hearing out of the presence of the jury. The decision imposes no such requirement. As discussed at length in *United States v. Ricks*, 639 F.2d 1305 (5th Cir. 1981), the trial court has discretion to determine the application of the *James* ruling and rationale in the specifics of the trial setting encountered. Obviously, a separate hearing out of the presence of the jury, in which the parties develop all pertinent evidence of the conspiracy and defendant's involvement, would be the optimum method for avoiding inadvertent introduction of hearsay and resulting reversible error. Such hearings are not always feasible. As we observed in *Ricks*, if no separate hearing is held, but: "at the end of the trial, the trial judge finds ... that a preponderance of the evidence proves the predicate facts, no error has occurred in the admission of the coconspirator statements." 639 F.2d at 1310.

■ Our review of the record convinces us that the existence of the conspiracy and Whitley's involvement was adequately proven, separate and apart from any testimony of a co-conspirator which might be considered inadmissible. Neither the allowance of McClung's testimony nor the trial judge's failure to specifically articulate his findings and conclusions that the *James* requirements had been met, constitute reversible error on the state of this record.

### 3. Jury charge

Whitley complains of the trial judge's instructions to the jury on conspiracy. The court charged:

In your consideration of the conspiracy offense as alleged in the indictment, you should first determine from all of the testimony and evidence in the case whether or not the conspiracy existed as charged.

If you conclude that a conspiracy did exist as alleged, you should next determine whether or not the defendant under consideration willfully became a member of such conspiracy.

In determining whether a defendant was a member of an alleged conspiracy, however, the jury should consider only that evidence, if any, pertaining to his own acts and statements. He is not responsible for the other acts or declarations of other alleged participants 'til it is established beyond a reasonable doubt, first, that a conspiracy existed, and, second, from the evidence of his own acts and statements, that the defendant was one of its members.

On the other hand, if and when it does appear beyond a reasonable doubt from the evidence in the case that a conspiracy did exist as charged and that the defendant under consideration was one of its members, then the statements and acts knowingly made and done during such conspiracy and in furtherance of its objects, by any other proven member of the conspiracy, may be considered by the jury as evidence against the defendant under consideration, even though he was not present to hear the statements made or see the act done. This is true because, as stated earlier, a conspiracy is a kind of partnership, so that, under the law, each member is an agent or partner of every other member, and each member is bound by or responsible for the acts and statements of every other member made in pursuance of their unlawful scheme.

■ Whitley contends that this instruction is contrary to our *James* holding because it improperly defers the decision

whether to consider the hearsay statements to the jury. We do not agree. The instruction is a variation of the standard jury instruction on proof of membership in a conspiracy. *See Devitt and Blackmar* § 27.05 (3d ed. 1977). *James* does not destroy the validity or vitality of this instruction. The trial court determines whether to admit statements by co-conspirators as non-hearsay under Fed.R.Evid. 801(d)(2)(E). Once admitted, the jury assesses the weight and credibility of such statements, just as it evaluates all evidence. The court properly charged the jury.

### 4. Sufficiency of the evidence

Whitley argues that the evidence is not sufficient to sustain the verdict. Our review of the record compels a contrary conclusion.

As so frequently noted, the test for evidentiary sufficiency is "whether the jury could reasonably conclude that the evidence, viewed in the light most favorable to the government, left no reasonable doubt of the appellant's guilt." *United States v. Alvarez*, 625 F.2d 1196, 1197 (5th Cir. 1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

The evidence reflects that Whitley and others motored from Texas to Lafayette, Louisiana, and rented lodgings. He was seen with Muscarella, the pilot of the suspect airplane, and with McClung, who admitted his own involvement. Customs officers observed Whitley at the remote LeGros airstrip the day prior to the night the suspect plane arrived, and at 9:00 p.m. on the night the unlighted aircraft taxied up to the pickup he occupied. The aircraft had been tracked as it exited and re-entered United States airspace. Whitley fled the scene when the customs plane began its landing manuever. The suspect plane quickly departed LeGros and was found abandoned in the middle of the Bunkie landing strip, with 760 pounds of marijuana in plastic bags in the grass 50 to 60 feet distant. Marijuana gleanings and residue were found in the hastily abandoned aircraft. While at the airstrip, McClung in the leased Buick communicated by radio with Whitley in the pickup truck. Whitley provided the hand-held radio equipment. There was radio communication between the vehicles on the ground and the approaching aircraft. When the customs aircraft arrived, one of the three men in the pickup ran to the Buick, threw in the hand-held radio, and sounded the alarm. The pickup then raced to the opposite end of the taxiway and Whitley and the others ran into the brush. From these facts, and others not here noted, the jury could reasonably conclude that Whitley was guilty as charged.

### 5. Ineffective assistance of counsel

Finally, Whitley maintains that he was denied his constitutional right to the effective assistance of counsel. This count is raised initially on appeal. We generally require presentation of this issue first in the trial court. However, where the record is sufficiently developed with respect to this claim, we may address its merits. *United States v. Phillips*, 664 F.2d 971, 1040, (5th Cir. 1981). Here we can determine the validity of the claim from the present record.

Whitley complains that his counsel was ineffective, citing his failure to seek a *James* hearing. We have repeatedly held that the constitutional guarantee entitles one to an attorney who provides reasonably effective representation. Our review of this record convinces us that the representation provided by Whitley's counsel was within the constitutional parameters. His failure to request a *James* hearing, in light of our discussion herein, was not a mistake of constitutional proportions.

The conviction of Jesse McCoy Whitley is AFFIRMED.