**UNITED STATES of America, Plaintiffs-Appellants,**

v.

**Mark Steven MILLER and Jesus Salvador Zambrano-Mares, Defendants-Appellees.**

No. 86–1131.

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1986.

Kevin E. Shannon, Federal Public Defender, El Paso, Tex., for Miller.

Joseph A. Calamia, El Paso, Tex. (Court-appointed), for Mares.

Rangeley Wallace, Atty., Dept. of Justice, Washington, D.C., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for the U.S.

Before REAVLEY and POLITZ, Circuit Judges and BELEW *, District Judge.

BELEW, District Judge:

Appellants Mark Steven Miller and Jesus Salvadore Zambrano-Mares (hereinafter "Zambrano") appeal from the judgment entered on the jury's verdict of guilty on Counts 1 (conspiracy to possess heroin with intent to distribute) and Count 3 (possession of heroin with intent to distribute). A judgment of acquittal was entered as to both appellants on Count 2 (importation of heroin). Both appellants were sentenced to concurrent five year terms of imprisonment on each Count on which convicted and a consecutive ten year special parole term on Count 3.

Appellant Miller contends that his motion to dismiss the indictment should have been granted as to Counts 1 and 3 because the evidence showed that Miller's conduct and participation in the alleged offenses came about as a result of "outrageous government conduct" and therefore Miller "was entrapped as a matter of law."

Appellant Zambrano raises six grounds of error: (1) deprivation of a fair and impartial trial by the use in the Government's opening statement of inadmissible hearsay statements of co-defendant Miller made before the conspiracy was in existence; (2) the trial court's failure to conduct a "James hearing" prior to determining the admissibility of extrajudicial statements made by co-defendant Miller; (3) the trial court's failure to give, *sua sponte*, a timely instruction limiting the use of co-defendant Miller's hearsay statements; (4) the trial court's failure to grant Zambrano's requested jury instruction limiting the use of co-defendant Miller's hearsay testimony for proving Zambrano's pre-disposition to commit the offenses charged; (5) denial of due process of law by the outrageous conduct of the Government's agents; and (6) denial of effective assistance of counsel.

We find that none of these points warrant reversal of either conviction.

---

## Facts

The evidence, taken in the light most favorable to the Government, indicates that in October 1985 Officers Snodgrass and Parks of the Phoenix Police Department initiated an investigation to locate and apprehend a major supplier of heroin which was coming into Phoenix. In the early part of October 1985, Snodgrass, working undercover and posing as a thief, robber and some-time user of narcotics, made the acquaintance of Appellant Miller, a heroin addict and short-change artist. Miller informed Snodgrass that he could obtain large quantities of heroin from El Paso, and on two occasions supplied Snodgrass with small quantities of heroin. Miller referred to his connection in El Paso as "Flamo".

Snodgrass informed Miller that he and his partner (Parks) were going to pull off a robbery and wanted to use the proceeds to obtain a large amount of heroin to bring to Phoenix. After Snodgrass and Parks allegedly pulled off the robbery, Snodgrass contacted Miller who said he had been in contact with Flamo and he would now make the final arrangements for the deal. On October 29, 1985 Snodgrass and Miller flew to El Paso. Parks, who had flown down on another flight, met them at the airport in a rented car. Parks made the flight arrangements, which were paid for by the Phoenix Police Department. Miller's accomodations and meals while in El Paso were taken care of by Parks and/or Snodgrass.

Upon arrival in El Paso, Miller directed Parks in a search for Flamo, directing him to an alley off 5th and Oregon. Unable to find Flamo in this area, Miller directed Parks to drive to 1840 Cypress Street, Apartment 1188, where Flamo's brother Chamo lived. Miller and the officers left when no one answered the door, but returned later. At that time Miller left a note on the apartment door and on a car he recognized.

On October 30, 1985 the officers and Miller continued to look for Flamo. That evening they met appellant Zambrano ("Flamo") at the apartment on Cypress Street. They discussed the purchase of heroin and Zambrano left to see how much he could obtain. He later called Miller to meet him at the alley off 5th and Oregon to obtain a sample. While Parks and Snodgrass waited in the car, Miller obtained the sample and gave Zambrano $100.00 "front money" provided by Parks. Miller returned to the car, injected the heroin in the presence of the officers, and pronounced it good. After talking to the officers, Miller told Zambrano they would meet the next day to make the purchase.

The following day Miller and Snodgrass waited for Zambrano's telephone call to Miller's motel room. Zambrano and another co-defendant, Samilpas, came to the room, and the amount and price of the heroin was set. Miller left with Zambrano and Samilpas to examine, measure and package the heroin. Subsequently he called Snodgrass and told him to meet them at a Pizza Hut on North Mesa Drive. The arrests of all defendants, as well as Parks and Snodgrass for cover, took place at the Pizza Hut with the assistance of the El Paso Police Department and the local office of DEA.

## Appellant Miller

Appellant Miller contends that the conviction should be overturned because the conduct of Officers Snodgrass and Parks was so outrageous tht it violates his right to due process of law. The record reflects that while in Phoenix and in El Paso Snodgrass drove Miller around while Miller short-changed various stores. On one occasion in El Paso, Parks gave Miller $50.00 which Miller used to purchase heroin for his personal use. Miller "shot up" several times in the presence of one or both of the officers, including injecting the sample obtained from Zambrano. Through the officers, the City of Phoenix paid for Miller's transportation, food and lodging for the El Paso trip. Miller also charges that the idea for the offense originated with the Phoenix officers.

After the conclusion of the Government's case-in-chief, Miller moved for dismissal of all counts of the indictment, based on outrageous government conduct which violated Miller's constitutional rights of due proces. The motion was denied.

A defense based on "outrageous government conduct" is related to, but distinct from the defense of entrapment. *United States v. Nixon,* 777 F.2d 958, 963 (5th Cir.1985). It has its roots in *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973), where the Supreme Court stated "... we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." This Circuit has recognized that there exists, in appropriate cases, a defense on the basis of governmental misconduct. *E.g., United States v. Graves,* 556 F.2d 1319 (5th Cir.1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978); *United States v. Tobias,* 662 F.2d 381 (5th Cir.1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982); *Nixon, supra.*

A ruling on a motion to dismiss an indictment on the basis of outrageous government conduct or overreaching is a matter of law to be decided by the trial court, based on its factual findings. *Nixon, supra,* 777 F.2d at 963. Our review on this issue is limited to a decision of whether the trial court's ruling was clearly erroneous. *Id.* The standard to be applied is whether the government's conduct violates "fundamental fairness" and is "shocking to the universal sense of justice." *Tobias, supra,* 662 F.2d at 386. Even though the conduct "might shock some sensibilities," *Nixon* at 963, it must be evaluated in light of the undercover activity necessary to the "enforcement of the criminal laws," *id.,* and in the light of "the totality of the circumstances." *Tobias* at 387.

■ *Russell* held that government infiltration of drug rings "is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must, as a general rule, also be permissible." 411 U.S. at 432, 93 S.Ct. at 1643. This is necessary so that the agent will be taken into the confidence of the subjects of the investigation. *Tobias,* 662 F.2d at 386. *See also United States v. Gray,* 626 F.2d 494, 498 (5th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1367, 67 L.Ed.2d 346 (1981). ("providing of essential aid is not misconduct per se;" "Here the informants merely eased the way for the conspirators."). In the present case, the actions of Officers Snodgrass and Parks were arguably necessary to gain the confidence of Miller. If Snodgrass had arrested Miller each time Miller short-changed or injected heroin in Snodgrass' presense, the operation would have been blown. Snodgrass' provision of transportation for Miller in Phoenix was part of the process of gaining Miller's trust. The government's payment of expenses for the trip to El Paso and front money, once there, was no more than the supply of essential aid, and was not in itself illegal. A review of the record reveals that Miller was a heroin addict and short-change artist when Snodgrass met him; there are no indications that the officers encouraged Miller to inject heroin or aided him in locating heroin for his own personal use. They merely did not prevent him from doing so, in order to protect their own cover. The record gives no support to Miller's inference that he was encouraged to inject the sample obtained from Zambrano as a "field test".

A "common thread" in our decisions involving outrageous government conduct or overreaching is that "a defendant cannot avail himself of the defense where he has been an *active participant* in the criminal activities which gave rise to his arrest." *United States v. Yater,* 756 F.2d 1058, 1066 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). *See also Tobias,* 662 F.2d at 387. In *Yater* we held that even if the paid DEA informants initiated the deal wherein defendant was to obtain cocaine for sale to the DEA

agents, the testimony was clear that defendant actively participated by making contact with the supplier, arranging for delivery and personally appearing at the delivery. 756 F.2d at 1066. The record in this case likewise supports a finding that even if the officers initiated the idea of a large heroin purchase, Miller was an active, willing participant. He directed the officers in the search for Flamo/Zambrano, he obtained the sample, he negotiated the price for the deal, and he took part in the delivery.

*Tobias* established that the theory of outrageous government conduct or overreaching as violative of a defendant's due process rights should be applied "only in the rarest and most outrageous circumstances." 662 F.2d at 387. We do not find this to be such a case. The trial court's denial of Miller's motion to dismiss the indictment on such grounds was not clearly erroneous, and the record does not establish such defense as a matter of law. Miller's conviction on Counts 1 and 3 is affirmed.

### Appellant Zambrano

Appellant Zambrano's first four grounds of error involve the use and admissibility of extra-judicial statements of Appellant Miller to Snodgrass and/or Parks concerning Zambrano. In Phoenix Miller told Snodgrass that he had a heroin connection in El Paso with whom he had previous drug transactions. Miller referred to his connection as "Flamo", who turned out to be Zambrano. Miller also told Snodgrass that "Flamo" had connections with Mexican Mafia, earned his living selling heroin, and had shown Miller a poppy field and heroin processing plant in Mexico.

Because it is pivotal to three other grounds of error, we will consider first Zambrano's second ground of error: that the trial court committed reversible error in failing to conduct a *"James* hearing" before determining the admissibility of the extrajudicial statements of co-defendant Miller. In *United States v. James,* 590 F.2d 575 (5th Cir.1979) (en banc) *cert. de-*

*nied* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) we established certain standards for the admissibility of co-conspirators' extrajudicial statements under Federal Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Such a statement is admissible "only when there is a 'sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were made in furtherance of the conspiracy.' " *James, supra,* 590 F.2d at 581 (quoting *United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974)). A "sufficient showing" is made by "substantial, independent evidence of a conspiracy at least enough to take the question to the jury." *Id.* at 701 n. 14, 94 S.Ct. at 3104 n. 14. We held that this question of whether such a statement is admissible is one for the judge alone. *James, supra.* 590 F.2d at 579–80.

The preferred procedure, as established by *James,* is for the trial court, "whenever reasonably practicable," to require the showing of the conspiracy and defendant's connection to the conspiracy before admitting the co-conspirator's statement. *Id.* at 582. However, the trial court has "discretion to determine the application of the *James* ruling and rationale in the specifics of the trial setting encountered." *United States v. Whitley,* 670 F.2d 617, 620 (5th Cir.1982). Thus, the trial court may admit the co-conspirator's statement prior to the establishment of the predicate, subject to being "connected up." *United States v. Winship,* 724 F.2d 1116, 1121 (5th Cir. 1984). Regardless of the order, at the conclusion of all evidence, "on appropriate motion" the trial court "must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself" that the statement meets the criteria of Rule 801(d)(2)(E). *James,* 590 F.2d at 582.

Here, trial counsel for Zambrano did not make such an appropriate motion. During the prosecution's opening statement he made an objection on the ground of hearsay to the prosecutor's summary of Snodgrass' expected testimony about Miller's statements about "Flamo". Counsel for Zambrano again objected on the ground of hearsay as Snodgrass began to testify to Miller's statement about "Flamo". Both objections were overruled. Zambrano's counsel on appeal suggests that such objections should have alerted the trial judge to possible *James* issues and therefore the trial judge should have held a *James* hearing on his own initiative. In *United States v. DeRoche*, another panel pointed out that "[w]hile significant responsibility is placed upon the trial court to administer the *James* procedures, trial counsel has also been required by our precedent to request compliance with *James*." 726 F.2d 1025, 1028 (5th Cir.1984). The panel went on to hold that where defense counsel fails to move for a *James* hearing at the close of evidence, appellate review is limited to the plain error rule, *id.:* whether the error is "one which is 'so obvious that the failure to notice would seriously affect the fairness, the integrity or the public reputation of judicial proceedings.'" *Id.* at n. 3 (quoting *United States v. Musquiz*, 445 F.2d 963, 966 (5th Cir.1971)).

■ Failure to hold a hearing and make delineated findings on the question of admissibility is not error. *E.g., United States v. Manzella*, 782 F.2d 533, 545 (5th Cir.1986); *United States v. Whitley*, 670 F.2d 617, 620 (5th Cir.1982). Nor can we say, based on the record, that the trial court's admission of Miller's extrajudicial statements regarding Zambrano constituted plain error. There was sufficient independent evidence to establish the existence of a conspiracy, that Zambrano was a member of the conspiracy and that the statements of Miller were made in the course and in furtherance of the conspiracy.

■ In his brief *Zambrano* refers to the statements of Miller as "pre-conspiracy", apparently attempting to assert that the

statements were not "in the course and in furtherance" of the conspiracy. However, it has been held that "[a]lthough this phrase has a talismanic ring to it, we must not apply the standard too strictly, lest we defeat the purpose of the exception." *United States v. James*, 510 F.2d 546, 549 (5th Cir.1975), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1976). There is no error in admitting extrajudicial statements of a co-conspirator which are "a combination of boasts and information directed toward obtaining [Snodgrass'] confidence that [Miller] possessed both a source and the will to deal with [Snodgrass]." *United States v. McGuire*, 608 F.2d 1028, 1033 (5th Cir.1979). Additionally, the Government need not specifically prove when the conspiracy began. *United States v. Ledesma*, 499 F.2d 36 (9th Cir.1974), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). Since there was sufficient independent evidence (testimony regarding their conduct) to link both Miller and Zambrano to the conspiracy, it was not plain error to admit Miller's statements made "during the pendency of and in furtherance of the conspiracy," *United States v. Jennings*, 527 F.2d 862, 869 (5th Cir. 1976), even though Miller's statements may have predated Zambrano's active participation in the conspiracy. *See United States v. United States Gypsum Company*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

Zambrano's first ground of error goes to the prosecution's reference to Miller's extrajudicial statements in opening statement. Since we have held that it was not error for such statements to be admitted into evidence, it was not error for the prosecutor to be allowed to refer to them in opening statment, especially in view of the trial court's admonition to the jury. Nor is there evidence of prosecutorial misconduct or bad faith. *See Frazier v. Cupp*, 394 U.S. 731, 736–37, 89 S.Ct. 1420, 1423–24, 22 L.Ed.2d 684 (1969).

Zambrano's third ground of error likewise fails. Since we have found that it was not error to admit Miller's statements un-

der Rule 801(d)(2)(E), it was not error to fail to give a limiting instruction. *See United States v. Jennings, supra*, 527 F.2d at 869.

■ As his fourth ground of error, Zambrano cites the trial court's refusal to give an instruction to the jury limiting the admissibility of Miller's statements and prohibiting their use for the purpose of showing Zambrano's predisposition to rebut his entrapment defense. It is true that we have prohibited the use of hearsay in entrapment cases to show predisposition. *See United States v. Webster*, 649 F.2d 346, 347 (5th Cir.1981) (en banc). However, in *United States v. Nixon*, 777 F.2d 958, 964 (1985), this holding was clarified. If an extrajudicial statement is otherwise admissible under "the usual rules relating to hearsay," that statement may be admitted as evidence of predisposition. Similarly, if an extrajudicial statement is deemed to be non-hearsay under the Federal Rules of Evidence, it may be considered as evidence of predisposition. *Id.* Since the trial court's admission of Miller's extrajudicial statements as complying with Rule 801(d)(2)(E) was not error, neither was the court's failure to give the requested limiting instruction.

Zambrano raises the issue of outrageous government conduct as his fifth ground of error. For the reasons discussed above, in considering Miller's ground of error, this ground must fail as well. Additionally, Zambrano has not shown that he has standing to raise this issue. *See United States v. Graves*, 556 F.2d 1319, 1325 (5th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978).

Finally, as his sixth ground of error, Zambrano contends that he was deprived of effective assistance of counsel at his trial, in violation of the Sixth Amendment, by counsel's eliciting of prejudicial hearsay statements regarding Zambrano's character, reputation, and prior criminal activity on cross-examination of Officer Nava, a government witness.

Generally, an issue of ineffective assistance of counsel is required to be raised in the trial court. *United States v. Whitley*, 670 F.2d 617, 621 (5th Cir.1982). However, since we find the record in this case to be sufficiently developed to address the merits of the claim, we shall do so. *See, id.*

■ The cross-examination testimony of Officer Nava to which Zambrano directs his complaint is found at page 336–37 of the trial transcript (Record Volume VI). There Zambrano's trial counsel elicited the following: (1) Officer Nava is familiar with persons in south El Paso who are involved in the drug trade; (2) he believes that "Flemo" or "Flama" (the flame) is a nickname for Zambrano; (3) as far as he knows there are no other people who have a similar nickname such as "Flema" or "Flamo"— those would all be referring to the same person; and (4) he had heard of Jesus Zambrano for "some time", had seen him before (not on Cypress Street), but had not met him before October 31, 1985.

The standards for overturning a criminal conviction on the ground of ineffective assistance of counsel are found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The complaining defendant must make a showing of two components: (1) deficient performance by counsel which (2) results in prejudice to the defendant. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064. If defendant/appellant makes an insufficient showing on one component, we need not consider the other; the components need not be considered in any particular order. *Id.* at 697, 104 S.Ct. at 2069. We find that Zambrano has failed to make a sufficient showing that he was prejudiced by counsel's cross-examination.

In order to constitute prejudice for this purpose, Zambrano must show that counsel's alleged error was so serious as to deprive him of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. We must determine whether there is a "reasonable probability that, absent [the complained of action], the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068. Viewing the testimony summarized above in the context of "the totality of the

evidence" presented, *id.*, we feel that Zambrano failed to make a sufficient showing of prejudice.

The judgment of the district court is AFFIRMED.