**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 91-2638**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**KENNETH CHARLES FRAGOSO,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(November 23, 1992)

Before JONES, BARKSDALE, Circuit Judges and JUSTICE,[1] District
Judge.

EDITH H. JONES, Circuit Judge:

Kenneth Charles Fragoso was convicted of conspiracy to
possess with intent to distribute more than 5 kilograms of cocaine.
Because of his two prior felony convictions, he has been sentenced
to life imprisonment. He appeals his conviction on numerous
grounds. For the reasons stated below, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 6, 1990, Larry Carlton contacted U Daya Chand
Thakur, who at that time was working as a paid informant for the
Drug Enforcement Administration (DEA), to inform him that he was in
possession of some cocaine and that he wanted Thakur to meet him

_____

[1] District Judge of the Eastern District of Texas,
sitting by designation.

immediately.  The following morning, Carlton paged Thakur on his beeper, and Thakur returned the call from the DEA office.  During the conversation, which was taped by DEA agents, Carlton stated that he had ten kilos of cocaine to show Thakur and instructed him to wait by the phone for directions to a meeting location.  The second call was also recorded.

That afternoon, Thakur and Carlton met at Champs restaurant in Houston.  Thakur was "wired" during this meeting, but the recording of the conversation was unintelligible.  Thakur testified that Carlton told him that he had the cocaine in his duplex and that his Mexican partner, Charlie, was back at the duplex with the cocaine.  Thakur also testified that Carlton told him that if he moved the ten kilos of cocaine quickly, his partner Charlie could supply another twenty to thirty kilos of cocaine the next day.

After leaving the restaurant, Thakur followed Carlton to the duplex, where Fragoso was waiting.  Thakur expressed concern about the presence of Fragoso, whom Carlton introduced as Charlie, because Carlton had told him on the phone that they would be alone during the deal.  Carlton told Thakur not to worry about Fragoso's presence, because Fragoso was his partner and because he had spent time "in the joint."

Shortly after Thakur arrived at the duplex, Fragoso left the room and returned with a garment bag, which he threw on the floor, and instructed Thakur to "check it out."  Carlton opened the bag, which contained ten brown packages, and Thakur tested the

**2**

contents of one of the packages.  While Thakur tested it, Fragoso made representations about the quality of the cocaine, noting that it was "good stuff" and that it was "from Colombia."  Upon being told by Fragoso that he could supply Thakur with another ten to twenty kilos by the next evening, Thakur explained that his buyers were in New York and that he would have to call them.  Thakur then left the duplex.  DEA agents entered the duplex shortly thereafter[2] and seized Carlton and the cocaine.  Fragoso was arrested after climbing out a window and attempting to climb over a fence.

On September 5, 1990, Fragoso was charged in a three-count indictment with (1) conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine, (2) aiding and abetting the possession with intent to distribute in excess of 5 kilograms of cocaine, and (3) possession with intent to distribute in excess of 5 kilograms of cocaine.  After finding that the seizure of the cocaine violated the Fourth Amendment, the district court suppressed the cocaine, and the government moved to dismiss Counts 2 and 3 of the indictment.  Fragoso went to trial only on Count 1, the conspiracy count.  He was found guilty after a trial by jury.  Fragoso had two prior felony drug convictions, and he was sentenced to life imprisonment.

---

[2]    It is not clear just how long Thakur had been gone when the agents entered the duplex.  According to the trial testimony, it could have been as much as twenty minutes later.

## THE JENCKS ACT

During the trial, Fragoso's attorney requested all Jencks Act materials with respect to a particular DEA agent. Upon a defendant's motion, the Jencks Act provides that the court shall:

> order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b) (emphasis added). Access under the Jencks Act is limited to materials that fall under "the Act's definition of 'statements' which relate to the subject matter as to which the witness has testified." Campbell v. United States, 365 U.S. 85, 92, 81 S. Ct. 421, 425, 5 L.Ed.2d 428 (1961) (citing Palermo v. United States, 360 U.S. 343, 79 S. Ct. 1217, 3 L.Ed.2d 1287 (1959)).

If the defense makes a timely request and there is some indication in the record that the materials meet the Jencks Act's definition of a statement, the district court has a duty to inspect the documents in camera. United States v. Pierce, 893 F.2d 669, 675 (5th Cir. 1990); United States v. Hogan, 763 F.2d 697, 704 (5th Cir. 1985). This procedure was followed here, and the district court found that the submitted materials were not Jencks Act materials and need not be produced to the defendant.

Whether written materials constitute a statement under the Jencks Act is normally a question of fact to be determined by the trial judge, and the court's determination may not be disturbed unless clearly erroneous. Campbell v. United States, 373 U.S. 487,

4

493, 83 S. Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); <u>Hogan</u>, 763 F.2d at 704. Our examination of the material at issue reveals no error in the district court's determination. Neither report "relates to the subject matter as to which the witness has testified." Consequently, Fragoso's Jencks Act claim must fail.

## COCONSPIRATOR STATEMENTS

Fragoso claims that the court improperly permitted Thakur to testify about "hearsay" statements made by Carlton. Coconspirator statements are not, however, hearsay under the Federal Rules of Evidence:

> A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . (E) a statement by a conspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(E). For a statement to be admissible under this rule, "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'" <u>Bourjaily v. United States</u>, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). Whether statements are admissible under this rule is a preliminary question that "shall be determined by the court." Fed. R. Evid. 104(a); See <u>Bourjaily</u>, 483 U.S. at 175, 107 S. Ct. at 2778.

At the start of Thakur's testimony, Fragoso objected to the admission of hearsay statements by Carlton because no conspiracy had yet been established. Fragoso requested a <u>James</u>

**5**

hearing[3] in order to determine the existence of a conspiracy. The district court denied Fragoso's request for a James hearing, and Fragoso now argues that this was error. Interestingly, Fragoso's trial counsel conceded that under Bourjaily the court need not hold a James hearing outside the jury's presence. But even before Bourjaily, this court had so held. United States v. Gonzales, 700 F.2d 196, 203 (5th Cir. 1983); United States v. Whitley, 670 F.2d 617, 620 (5th Cir. 1982); United States v. Ricks, 639 F.2d 1305, 1310 (5th Cir. 1981). James has never required a hearing outside the presence of the jury.

Alternatively, Fragoso asserts that the district court erred procedurally in not making express findings of fact before allowing Thakur to testify concerning statements made by Carlton. Substantively, he argues that Thakur's testimony as a paid informant was so lacking in credibility that there was insufficient evidence independent of Carlton's coconspirator statements to support either the introduction of those statements or the conviction itself. Each of these arguments requires brief discussion.

When preliminary facts to admissibility of coconspirator testimony under Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence. Bourjaily, 483 U.S. at 181, 107 S. Ct. at 2781; Triplett, 922 F.2d at 1181. Fragoso argues that Bourjaily requires the trial court to make

_____

[3] See United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917, 99 S. Ct. 2836, 61 L.Ed.2d 283 (1979).

**6**

findings of admissibility before permitting introduction of coconspirator testimony:

> Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy."

Bourjaily, 483 U.S. at 175, 107 S. Ct. at 2778. We think this argument erroneously transforms a descriptive portion of the Court's opinion in Bourjaily into a mandatory procedure. Bourjaily did not purport to address the procedure for proving the admissibility of coconspirator statements. The opinion was concerned with the substantive question whether the statements themselves could be considered in conjunction with other evidence of conspiracy to satisfy the predicate for admission. Bourjaily, 483 U.S. at 181, 107 S. Ct. at 2781. In holding that they could be so used, Bourjaily "swept" away a major portion of our James decision. United States v. Perez, 823 F.2d 854, 855 (5th Cir. 1987).

Bourjaily is, however, consistent with that portion of James which emphasizes the trial court's procedural duty to make findings "upon appropriate motion" before admitting coconspirator statements. James, 590 F.2d at 582; see United States v. Ascarrunz, 838 F.2d 759, 762 (5th Cir. 1988). And it is true that James advised that "[t]he district court should, whenever reasonably practicable, require the showing of a conspiracy and of

**7**

the connection of the defendant with it before admitting declarations of a coconspirator." James, 590 F.2d at 582.  But the court also recognized that it is sometimes not reasonably practicable "to require the showing to be made before admitting the evidence."  Id.  As a result, both before and after Bourjaily this court has approved district courts' practice of carrying a James motion through trial or at least through presentation of the government's case until a determination of the existence of the Rule 801(d)(2)(E) predicate facts[4] can be appropriately made.  See, e.g., United States v. Lechuga, 888 F.2d 1472, 1479 (5th Cir. 1989) (denying motion to exclude "at the close of the government's evidence"); Perez, 823 F.2d at 855 (motion carried with the case); Ricks, 639 F.2d at 1310.  In some cases, of course, judicial economy suggests that express findings on admissibility should be made before the coconspirator statements are introduced.  See, e.g., Ascarrunz, 838 F.2d at 762; Gonzales, 700 F.2d at 203; Whitley, 670 F.2d at 620.  This is a matter committed to the broad discretion of the trial court.  United States v. Cantu, 557 F.2d 1173, 1180 (5th Cir. 1977), cert. denied, 434 U.S. 1063 (1973).

This case strayed off the procedural track in that the court never made any findings as to the predicate facts under Rule 801(d)(2)(E).  Although we caution district judges against such

---

[4] The predicate facts are the existence of the conspiracy and that the statements sought to be introduced were made during and in furtherance of the conspiracy.  See, e.g., United States v. Lechuga, 882 F.2d 1472, 1479-80 (5th Cir. 1989).

**8**

oversights, the error here was harmless. In denying the defendant's motion for directed verdict of acquittal at the close of trial, the court implicitly found the evidence sufficient to establish a conspiracy. See United States v. Ammar, 714 F.2d 238 (3d Cir.), cert. denied, 464 U.S. 936, 104 S. Ct. 344, 78 L.Ed.2d 311 (1983); United States v. Lutz, 621 F.2d 940, 947 (9th Cir.), cert. denied, 449 U.S. 859, 101 S. Ct. 160, 66 L.Ed.2d 75 (1980).

Fragoso also asserts substantively that there was not sufficient evidence independent of Carlton's statements to support the existence of a conspiracy and hence the admission of the statements under Rule 801(d)(2)(E). Bourjaily declined to decide whether there must be any evidence independent of coconspirator statements to determine that a conspiracy has been established by a preponderance of the evidence. Bourjaily, 483 U.S. at 179, 181, 107 S. Ct. at 2781. That question is of no moment in this case, for independent evidence of a conspiracy between Fragoso and Carlton existed, and, together with coconspirator statements, that evidence was sufficient to show the existence of a conspiracy by a preponderance of the evidence.

When Thakur arrived at Carlton's duplex, Carlton and Fragoso communicated through the door using code language that Thakur did not understand. After being escorted around to the back door, Thakur was introduced to Fragoso. They shook hands, and Fragoso said, "Let's go in." While they were walking in, Fragoso said to Thakur, "Don't worry, everything is cool." Once in the duplex, Fragoso went to the back room, brought out a brown garment

bag, and threw it on the floor. Fragoso then told Thakur to check it out. The garment bag contained ten brown packages. On one of the packages, Thakur saw the letters, "YGA," and asked if somebody had just flown in from Hong Kong. Fragoso replied, "No, this is from Colombia." He then told Thakur that one of the packages was open. Thakur found the package, opened it, and tested the cocaine. Fragoso stated that it was "good stuff." Fragoso also told Thakur that if he could get rid of that ten by the next morning, then he could get Thakur another ten or twenty more by that evening.

This evidence all tends to support the conclusion that a conspiracy existed between Fragoso and Carlton. If one considers the coconspirator statements and the lack of contrary evidence, there was certainly sufficient evidence to support the existence of a conspiracy between Fragoso and Carlton. Fragoso makes much of the inherent untrustworthiness of testimony by a paid informant such as Thakur. Carlton did not testify, so Thakur's testimony stood virtually alone to incriminate Fragoso. Fragoso considers it malevolently significant that the "wire" Thakur carried to memorialize the conspiracy malfunctioned consistently. To infiltrate and expose the most sophisticated drug traffickers the government must deal with, and must surely sometimes be fooled by, unsavory characters. There is little this appellate court can properly do to prevent overreaching but to implore that prosecutors exercise sound moral and legal judgment and to insist that juries be fully informed of the conditions under which a paid informant

10

worked.  The credibility of Thakur's testimony was for the jury to assess.

## EVIDENCE OF PRIOR CONVICTIONS

Fragoso next asserts that fundamental, incurable error occurred when Thakur testified that Carlton assuaged his nervousness about Fragoso by telling him not to worry because Fragoso had spent time "in the joint."  Evidence of prior convictions is admissible only for limited purposes.  See Fed. R. Evid. 404(b); Fed. R. Evid. 609.  The district court ruled that Thakur's statement was inadmissible and sustained Fragoso's objection.  We assume without deciding that the statement was not properly admissible.[5]  When the district court sustained the objection, he asked Fragoso's counsel if she wanted an instruction and was told that she did.  The court then instructed the jury that he had sustained the objection and that they were to disregard the witness's last response.  At no point during the trial did Fragoso suggest that the court's instruction was inadequate, nor did he ever request a mistrial.  Fragoso's assertion that the district court's alleged error is incurable is incorrect.  The district court's instruction to disregard the comment cured the error, if any.  See United States v. Fields, 923 F.2d 358, 360 (5th Cir.), cert. denied, ____ U.S. ____, 111 S. Ct. 2066, 114 L.Ed.2d 470

---

[5]     The government argues on appeal that Thakur's statement was admissible because it was part of the puffery used to obtain Thakur's confidence.  See Lechuga, 888 F.2d at 1480; United States v. Miller, 664 F.2d 94, 98 (5th Cir. 1981), cert. denied, 459 U.S. 854, 103 S. Ct. 121, 74 L.Ed.2d 106 (1982).

(1991); <u>United States v. Avarello</u>, 592 F.2d 1339, 1346 (5th Cir.),

<u>cert. denied</u>, 444 U.S. 844, 100 S. Ct. 87, 62 L.Ed.2d 57 (1979).

**VARIANCE BETWEEN THE INDICTMENT AND THE JURY CHARGE**

The indictment charged Fragoso with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine. The district court instructed the jury that it was not required to show that Fragoso knew the substance was cocaine, only that he conspired to possess with intent to distribute some controlled substance. Fragoso asserts that this discrepancy was reversible error.[6] Fragoso was convicted of conspiracy to possess with intent to distribute under 21 U.S.C. § 846, which adopts as the object of a conspiracy the crime of possession with intent to distribute, as defined in 21 U.S.C. § 841(a). Under section 841(a), "the government is not required to prove that a defendant knew the exact nature of a substance with which he was dealing; it is sufficient that he was aware that he possessed some controlled substance." <u>Gonzales</u>, 700 F.2d at 200. Jury instructions such as that given in this case were approved by this court long ago. <u>Gonzales</u>, 700 F.2d at 200 (jury instructed that it could convict Gonzales if he "knew that there was some controlled substance in the car, whether or not he knew it was actually heroin or some other drug or narcotic");

---

[6] Fragoso also argues that there was insufficient evidence to prove that cocaine was involved. Here the ten kilos of cocaine seized at the duplex were suppressed by the trial court. Despite the lack of physical evidence in the form of the cocaine itself, Thakur's conversations with Carlton include numerous references to cocaine as the subject of the transaction. In light of these references, there was more than enough evidence for the jury to infer that Fragoso had conspired with Carlton to possess cocaine with intent to distribute it.

see United States v. Rada-Solano, 625 F.2d 577, 579 (5th Cir.), cert. denied, 449 U.S. 1021, 101 S. Ct. 588, 66 L.Ed.2d 482 (1980). There was no error in the jury charge.

**SENTENCING**

Fragoso's final contention is that he was improperly sentenced because the district court did not specifically follow the procedures set forth in 21 U.S.C. § 851 to prove and base a sentence enhancement on prior convictions. The government does not deny the court's oversight, but it notes that Fragoso was well aware of the likelihood of enhancement from the government's pretrial information, filed pursuant to § 851(a)(1), alleging two prior convictions. Although Fragoso objected to the presentence investigation report and objected to the government's failure to prove the convictions at trial, he never challenged them.

For two reasons, there is no reversible error. First, Fragoso could not challenge his 1980 conviction under the limitations provision of section 851(e), and where that section prohibits a challenge to a conviction, "[n]either the enhancement statute nor reason requires a trial court to adhere to the rituals of § 851(b)." United States v. Nanez, 694 F.2d 405, 413 (5th Cir. 1982), cert. denied, 461 U.S. 909, 103 S. Ct. 1884, 76 L.Ed.2d 813 (1983); see United States v. Weaver, 905 F.2d 1466, 1482 (11th Cir. 1990), cert. denied, ____ U.S. ____, 111 S. Ct. 972, 112 L.Ed.2d 1058 (1991). Second, while Fragoso's ability to challenge the use of his later conviction is not barred by section 851(e), this court recently held that a defendant's "failure to comply with the

**13**

procedures of § 851(c), when coupled with the absence of any suggestion . . . that the judge's omission precluded him from presenting a specific challenge to [a prior conviction]," amounts to harmless error. United States v. Garcia, 954 F.2d 273, 278 (5th Cir. 1992). Even on appeal, Fragoso does not argue that he would or could have raised a proper challenge to his prior convictions had he received the district court's warning under section 851(b). Consequently, as in Garcia, the district court's error, if any, was harmless.

Finally, for the first time on appeal, Fragoso argues that it was cruel and unusual punishment to imprison him for life without parole. The Supreme Court's decision in Harmelin v. Michigan, ____ U.S. ____, 111 S. Ct. 2680, 2686, 115 L.Ed.2d 836 (1991), forecloses this contention.

## CONCLUSION

For the foregoing reasons, Fragoso's sentence is **AFFIRMED**.